Breitel, J.
The People appeal from the dismissal of an indictment for criminal contempt under subdivision 6 of section 600 of the former Penal Law. The indictment in separate counts charged four violations of the statute, based upon defendant’s allegedly evasive, equivocal, and false responses to questions asked of him in two appearances before the New York County Grand Jury on June 11 and June 18,1964. The Supreme Court, New York County, dismissed the indictment on the ground that defendant, while testifying as a witness before the Grand Jury, was denied the right to counsel when he was refused permission to leave the Grand Jury room to discuss the propriety of a question with his lawyer. The Appellate Division, by a divided court, affirmed without reaching the counsel issue on the ground that defendant was immune from prosecution for contempt since he was a “ target ” of the inquiry. Two Justices, in dissent, disputed defendant’s status as a target, and also concluded that under the circumstances in which defendant sought “ advice,” the refusal to permit defendant to consult with his lawyer did not amount to an improper interference with the right to counsel.
The order should be reversed and the indictment reinstated. Under the rule in People v. Tomasello (21 N Y 2d 143, infra), this defendant is subject to prosecution for criminal contempt for evasive testimony before the Grand Jury whether or not he was a possible defendant. Nor was he in fact deprived of any right to consult with his lawyer, although in a proper case a Grand Jury witness has such right.
Defendant, owner of “ two licensed bars and grills ” in the sensitive mid-town area, was called before the Grand Jury on June 11,1964. At the outset, he refused to be sworn on the ground that he was a defendant in a pending misdemeanor prosecution. He was then told by an assistant district attorney that he was called “ solely in the role of a witness ” in the Grand Jury’s investigation of a bribery conspiracy involving police and officials of the State Liquor Authority. After he was told by the prosecutor, before the Grand Jury, that the “ grand jury is ready to confer immunity upon you should you consider any answers that you might have to give [incriminatory],” and after he had said that he understood the nature of this advice, he consented to being sworn. Defendant was thereafter questioned about conversations concerning investigations of police payoffs, which he *422 allegedly had had with one Benny Cohen in 1963. When he stated that he could not recall such conversations, he was reminded that the Grand Jury had “ voted to confer immunity ” upon him, and that he was legally obligated to give truthful testimony. Pressed to affirm or deny that the conversations had taken place, defendant asked: ‘ ‘ Could I excuse myself to see my attorney for a minute? * * * I want to ask him if it’s a proper question.” This request was. denied and, after defendant persisted in his request, the prosecutor suggested that they “go in open court * * * and make an application.” This course was not pursued, however. Instead, the Grand Jury foreman, at the prosecutor’s request, directed the witness to answer. He thereupon answered that he did not recall the conversations.
The questioning then turned to the subject of defendant’s alleged meeting in September, 1963 with one O’Shea, a police sergeant. Although the conversation allegedly involved a confidential investigation pending against defendant’s friend, Benny Cohen, defendant persisted in stating that he did not “ recall ” the conversation and could not affirm or deny that it had ever occurred. This testimony was the basis for one of the four contempt charges in the indictment.
The other three counts of the indictment dealt with testimony given when defendant was recalled, a week later, on June 18,1964. They too involved defendant’s purported inability to recall conversations in the recent past. Thus, defendant stated that he could not recall whether anyone had, within the previous six months, told him to stay away from Sergeant O’Shea because the officer was under investigation. Nor could he recall having entertained police officers, other than a police captain, at his farm.
The basis for the Appellate Division’s opinion — the immunity enjoyed by a prospective defendant or target of investigation from prosecution for contempt on the basis of his Grand Jury testimony—was recently undermined by this court in People v. Tomasello (21 N Y 2d 143, supra). In the Tomasello case, the court held that a Grand Jury witness who is a possible defendant or target and who has not received transactional immunity for a previously committed substantive offense under section 2447 of the former Penal Law could nevertheless be prosecuted for perjury on the basis of his current testimony. The court reasoned that such a witness enjoys the benefits of an exclusionary rule, *423 often referred to as an “ immunity, ’’ forbidding use of his compelled statements and any derivative evidence (“ fruits ”) in a prosecution for a previously committed substantive crime. It held, therefore, that he is not also endowed ‘‘ ‘ with a license to commit perjury.’ ” Of course, this reasoning extends as well to prosecutions for contempt committed before the Grand Jury, particularly when (as here) the contempt involves answers “ so false and evasive as to be equivalent to no answer at all ” (People ex rel. Valenti v. McCloskey, 6 N Y 2d 390, 398). The “ use ” of testimony to establish contempt or perjury, where the current testimony itself constitutes the contempt or perjury, has been contrasted with the use of testimony to establish commission of a prior, substantive offense (8 Wigmore, Evidence [McNaughton rev. ed.], § 2282, pp. 511-512, cited in People v. Tomasello, supra; former Penal Law, § 2447, subd. 2). Hence, even if defendant Ianniello was a target of the investigation, under the reasoning of the Tomasello case, he may nevertheless be punished for contempt for his delinquency in testifying. When a witness is not a target, of course, the propriety of subjecting him to the contempt sanction has never been questioned.
This case also raises a novel question concerning the existence and scope of the Grand Jury witness’ right to consult with counsel. It is, of course, a familiar proposition that the lawyer for a witness is not entitled to be present in the Grand Jury room (see, e.g., Anonymous v. Baker, 360 U. S. 287, 292; Matter of Groban, 352 U S. 330, 333; United States v. Scully, 225 F. 2d 113, 115-116, cert. den. 350 U. S. 897; Matter of Black, 47 F. 2d 542, 543; cf. People ex rel. McDonald v. Keeler, 99 N. Y. 463, 484-485; Matter of Anonymous v. Arkwright, 5 A D 2d 790, 791, mot. for lv. to app. den. 4 N Y 2d 676). This rule rests upon the statutory exclusion of all except certain authorized persons before the Grand Jury and the need to preserve the secrecy of Grand Jury proceedings (Code Crim. Pro., §§ 255-259). There remains, however, the further question whether the witness should not be entitled to leave the Grand Jury room to consult with his lawyer (see United States v. Leighton, 265 F. Supp. 27, 38; United States v. Kane, 243 F. Supp. 746; United States v. Grunewald, 164 F. Supp. 640, all indicating that the procedure in the Southern District of New York is to exclude the lawyer but to permit the witness to leave the Grand Jury room and consult *424 with him; this is also done in State Grand Jury proceedings [see, e.g., People v. De Feo, 284 App. Div. 622, 627, revd. on other grounds 308 N. Y. 595]). Such conduct by the witness does not violate the statutory policy of secrecy, for it has always been understood that the witness is at all times free to discuss his testimony outside the Grand Jury room. Whether and to what extent the witness ought to have a right to consult with his lawyer depends upon an analysis of the proper role of counsel in these circumstances, and the need to avoid procedural strictures which would impair the effectiveness of Grand Jury investigation.
Since a Grand Jury proceeding is properly an investigation rather than a prosecution directed against the witness, the witness has no right to be “ represented ” by counsel, in the technical sense (see, e.g., Matter of Groban, 352 U. S. 330, 332-333, supra). However, in light of current recognition of the importance of counsel in providing effective notice of rights, it is difficult to maintain that the witness is not entitled to the advice of his lawyer (cf. Miranda v. Arizona, 384 U. S. 436, 475; Escobedo v. Illinois, 378 U. S. 478, 486; People v. Donovan, 13 N Y 2d 148,153). As a matter of fairness, government ought not compel individuals to make binding decisions concerning their legal rights in the enforced absence of counsel (see Matter of Conlon v. Murphy, 24 A D 2d 737 [patrolman could not be dismissed, without notice or hearing, on the basis of his refusal to give further Grand Jury testimony, after he had asked for and been denied an opportunity to consult counsel]). Courts have a particular responsibility to prevent unfairness in Grand Jury proceedings, for the Grand Jury is an “ arm of the court ” (see, e.g., Matter of Spector v. Allen, 281 N. Y. 251, 260; People v. Pisanti, 179 Misc. 308, 309).
The legal rights which may be critically affected before the Grand Jury, and concerning which the witness should be entitled to consult with his lawyer, are several. First, the -witness may be put in a position of determining whether to assert or waive his privilege against self incrimination. When the witness is a “ target ” of the investigation, his statements and any evidence .derived from them (“ fruits ”) cannot be used in a prosecution against him for a previous substantive offense unless he expressly *425 waives the privilege (People v. Steuding, 6 N Y 2d 214). Even he, however, must make a legally significant choice in answering or claiming his privilege; unless he claims his privilege he does not receive transactional immunity under section 2447 of the former Penal Law. The witness who is not a target of the inquiry faces an even more critical decision for, unless he claims his privilege and thereby invokes immunity, his statements can be used against him substantively. Faced with a confusing variety of rules concerning the existence and scope of his privileges, a witness should not be required to make these choices unaided by his lawyer.
A second legal right which may be affected before the G-rand Jury is the witness’ right to refuse to answer questions having no bearing on the subject of the investigation (see Matter of Koota v. Colombo, 17 N Y 2d 147, 150). To prevent unwarranted intrusion into the witness’ privacy, he ought to be allowed to consult with his lawyer concerning the propriety of Grand Jury questioning. Finally, where a question may involve a testimonial privilege enjoyed by the witness or to which he may be subject — for example, between attorney and client, doctor and patient or husband and wife—the witness should be permitted to consult with counsel.
Whenever a witness demands to see his lawyer for counselling concerning his legal rights (as opposed to mere strategic advice), he should be given an opportunity to do so. If his right is denied, however, he does not have license to commit perjury or contempt. Rather, he must persist in his refusal to answer, thus forcing the prosecutor to take the matter into open court for a ruling. By requiring the matter to be taken to the presiding Justice, the proceeding is expedited and the danger of stalling tactics reduced. The judge can rule on questions of pertinency, after argument of counsel. He can determine whether a colorable claim of testimonial privilege is presented, and can inform the defendant of the extent of his immunity from prosecution for prior offenses. Where a witness persists in raising objections which are palpably not in good faith, the judge may compel him to desist from this course under the sanction of contempt proceedings.
This procedure was not followed here. Instead, defendant undertook to answer the prosecutor’s questions, albeit in an *426 evasive manner. If the instant record left any room for the possibility that defendant in fact needed legal counsel or, in good faith, asked for aid of counsel in a proper matter (as opposed to strategic advice in answering questions), affirmance would be required in the interests of fairness. The record, however, makes it abundantly clear that the aid of counsel was not required, and that defendant with full awareness was seeking help only in answering questions he found embarrassing. Defendant’s request for his lawyer’s advice was limited to whether the question put to him was “ proper.” Yet, the pertinence, indeed the relevance, of the question was never really in issue: it dealt with an alleged conversation concerning police payoffs, and defendant had been told initially that the purpose of the Grand Jury investigation was to ‘ ‘ determine if there was in existence a conspiracy to bribe or give unlawful fees to public officials of the City of New York, to wit, the Police Department ”. He never raised any doubt as to the scope of the inquiry.
Defendant did not request advice concerning any testimonial privileges, or his privilege against self incrimination, or the obtaining of transactional immunity. Indeed, he had been repeatedly told that the Grand Jury was interested in him only as a witness, and that it was prepared to confer immunity upon him.
Finally, three of the contempt counts refer to testimony given after a week’s recess, during which defendant had extended opportunity to consult with hi-s lawyer and undoubtedly did so, and hence are free of taint. The appearance before the Grand Jury a week after the first meeting is critically important. By that time defendant had the fullest opportunity to consult with counsel. Actually, the only area in which he still needed proper lawful advice was with respect to his status as a witness given transactional immunity. The Grand Jury was still insisting unequivocally that it was giving him immunity or was ready to do so, and there was no assertion by anyone or implication from anything that he had waived any rights to his privilege against self incrimination or that he was not entitled to the fullest immunity allowed by the statute. His conduct on his second appearance before the Grand Jury, therefore, presents no difficulty in assessing it as contemptuous and is highly persuasive *427 in confirming that his purpose in asking to speak with his lawyer on the first occasion was specious and without legal basis.
It should be noted in passing that defendant argues that he had not obtained full transactional immunity under section 2447 of the former Penal Law, although it is all but impossible that he could or would be prosecuted for a substantive offense after the repeated assurances given to him by officials authorized to confer immunity under an enabling statute. True, to obtain full immunity under section 2447, the witness must “ refuse to answer a particular question” on grounds of privilege, and then answer the question when ordered to do so by the Grand Jury (People v. Laino, 10 N Y 2d 161, 173-174; emphasis in original). Defendant Ianniello never literally refused to answer a specific question on the ground of privilege at any one time, but he made it patent that he would not be sworn or answer questions unless he was given immunity, calling attention to the fact that there was a criminal action pending against him. After he was told that he would have full immunity he was sworn and purported to answer the questions put to him. Later when he refused to answer some questions, he was directed to do so. All the conditions referred to in the Laino case (supra) were thus satisfied. The only thing absent is the literal mouthing of the traditional words in claiming the privilege against self incrimination. Even if, and it is difficult to conceive, defendant did not obtain transactional immunity, however, it is of no relevance to his right-to-counsel claim. Defendant’s request for counsel did not relate to an issue of self incrimination, but only to one of pertinency. The record indicates that there was no bona fide issue as to the pertinency of the question and, therefore, no need to consult with counsel on that issue.
Defendant finally contends that the ‘ ‘ evidence adduced before the Grand Jury was insufficient in law to have warranted the finding of the indictment.” This contention is without merit. Defendant’s answers before the Grand Jury, dealing with significant conversations in the recent past, could be found evasive by a jury. Consequently, they may well come within the rule that contempt is committed when a defendant’s response is “ so false and evasive as to be equivalent to no answer at all ” (People ex rel. Valenti v. McCloskey, 6 N Y 2d 390, 398, supra).
*428 Accordingly, the order of the Appellate Division should be reversed and the indictment reinstated.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Keating and Jasen concur.
Order reversed, etc.