Jerry LANGELLA, Petitioner,

v.

COMMISSIONER OF CORRECTIONS, STATE OF NEW YORK, Respondent.

No. 76 Civ. 1790–CLB.

United States District Court, S. D. New York.

May 12, 1976.

Nancy Rosner, New York City, for petitioner.

Robert M. Morgenthau, Dist. Atty., by Henry J. Steinglass, Asst. Dist. Atty., New York City, for respondent.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Upon his plea of guilty, petitioner was convicted in the Supreme Court of the State of New York, New York County on July 24, 1975, of criminal contempt in the first degree, N. Y. Penal Law § 215.51. Petitioner was sentenced to a term of five months imprisonment.[1]  He was permitted

---

1. Since petitioner was sentenced to a term of five months imprisonment, he would not be remanded to the custody of the Commissioner of Corrections of the State of New York. Rath-

**1216**

to continue on bail pending review by the state appellate courts. The Appellate Division of the Supreme Court, First Department, affirmed the judgment of conviction and the New York Court of Appeals denied petitioner leave to appeal. Petitioner, having exhausted his state remedies, seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.[2]

Petitioner attacks his conviction on three separate constitutional grounds. First, petitioner contends that he was denied his right not to be compelled to answer before a State grand jury, questions that were derived as a result of unlawful electronic surveillance. Petitioner contends that this right is derived from 18 U.S.C. § 2515 and the Fourth and Fifth Amendments of the United States Constitution. Second, petitioner contends that his Fifth Amendment rights were abridged when he was indicted for criminal contempt by the same grand jury that heard testimony he had given under a grant of immunity. Finally, petitioner contends that he was denied his Sixth Amendment right to counsel when he was not permitted to consult with his attorney during his interrogation before the grand jury.

▮ At the outset, respondent contends that since petitioner pleaded guilty, and there is no explicit statutory right to reserve his objections, these objections were waived by his plea and therefore this Court is barred from considering them. *Lefkowitz v. Newsome*, 420 U.S. 283, 293, 95 S.Ct. 886, 891, 43 L.Ed.2d 196 (1975), held that

"When state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional

claims in a federal habeas corpus proceeding."

In *Newsome*, the Court found that New York Criminal Procedure Law ("N.Y.C.P. L."), §§ 710.20(1) and 710.70(2) permitted a defendant, after pleading guilty, to appeal the denial of his motion to suppress evidence allegedly obtained as a result of an unlawful search and seizure. Accordingly, there was no bar to consideration of these claims upon a petition for a federal writ of habeas corpus.

Petitioner's claim that he was compelled to answer questions derived from unlawful electronic surveillance is similar to the Fourth Amendment claim raised in *Newsome*. Although petitioner could not move to suppress this alleged fruit of the poisonous tree, petitioner did invoke his federal constitutional and statutory rights with regard to the alleged wiretap information.

Similarly, petitioner's second claim, that he was deprived of his Fifth Amendment rights because the same grand jury heard his immunized testimony and later indicted him for contempt, is not barred. The issue raised here is whether this particular grand jury, in accordance with law, could return this indictment. New York permits a defendant to move to dismiss the indictment after his plea of guilty if "[t]he grand jury proceeding was defective, within the meaning of [N.Y.C.P.L. §] 210.35" or if "[t]he defendant has immunity with respect to the offense charged, pursuant to section 50.20 or 190.40." N.Y.C.P.L. §§ 210.20(1)(c), (1)(d), (2).

Petitioner moved to dismiss the indictment, which motion was denied in June 1975, and shortly thereafter, on June 18, 1975, he pleaded guilty. There was no doubt but that petitioner refused to answer

er, he would serve his sentence in the custody of the correctional system of the City of New York. Process here has been served upon both City and State officials, and the District Attorney of New York County has entered a general appearance, waiving whatever defect there may be in naming the appropriate party respondent.

**2.** Petitioner brought on his motion by order to show cause, issued April 20, 1976, the date on

which he was to surrender to State custody. A stay of surrender was granted pending hearing of this motion and was thereafter extended pending its determination. To expedite consideration of this petition, both sides agreed to submit the merits of the controversy upon briefs filed on direct appeal with the Supreme Court of the State of New York, Appellate Division. An evidentiary hearing was waived. There are no disputed factual issues.

the questions propounded, and the only issues raised were issues of law, whether there was just cause for the petitioner's refusal to answer. When these issues of law were decided adversely to petitioner, there were no issues remaining for trial. These legal issues provide fair ground for litigation and the Court declines to view petitioner's plea of guilty as a waiver of the constitutional claims that he sought to raise in the state courts. We therefore proceed to a consideration of the merits of petitioner's claims.

Petitioner was subpoenaed to testify under a grant of immunity before the State grand jury investigating the 1972 murder of one Joseph Gallo, an organized crime figure who was shot in an early morning restaurant killing. Petitioner moved to quash the subpoena on the ground that the questions likely to be asked of him were derived from unlawful electronic surveillance. In the course of the hearing on the motion to quash, the Assistant District Attorney stated that there had been electronic eavesdropping conducted in the investigation of this case, but that this had been done pursuant to an eavesdropping warrant issued by the Court. The prosecutor also stated that he had so informed petitioner's prior counsel on a previous occasion (A–22–23).[3] The Court denied petitioner's motion to quash the subpoena. Petitioner raised the same argument upon his motion to dismiss the contempt indictment, which motion was also denied.

█ Petitioner relies upon 18 U.S.C. § 2515 and *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). *Gelbard* held that § 2515 was available as a defense to a contempt charge, and that a grand jury witness may refuse to answer questions derived from unlawful electronic surveillance. In *Gelbard* and its companion case, *United States v. Egan,* the issue arose as a defense to a contempt charge, and not upon motion to quash a grand jury subpoena. Neither *Gelbard* nor § 2515 require the state court to quash a grand jury subpoena upon the speculation that the questions to be asked are derived from a tainted source. 408 U.S. at 60–61, 92 S.Ct. 2357.

Petitioner contends that a mere statement by the prosecutor that electronic surveillance was conducted pursuant to court order is an insufficient response and that therefore § 2515 bars an adjudication of contempt. Justice White in a concurring opinion provided the decisive vote for the majority in *Gelbard.* Obviously concerned lest a recalcitrant witness be empowered to obstruct the lawful investigations of a grand jury, Justice White concluded:

"Where the Government produces a court order for the interception, however, and the witness nevertheless demands a full-blown suppression hearing to determine the legality of the order, there may be room for striking a different accommodation between the due functioning of the grand jury system and the federal wiretap statute. Suppression hearings in these circumstances would result in protracted interruption of grand jury proceedings. At the same time, prosecutors and other officers who have been granted and relied on a court order for the interception would be subject to no liability under the statute, whether the order is valid or not; and, in any event, the deterrent value of excluding the evidence will be marginal at best. It is well, therefore, that the Court has left this issue open for consideration by the District Court on remand." *Id.,* at 70, 92 S.Ct. at 2372.

In accord with Justice White's views, *In re Persico,* 491 F.2d 1156 (2d Cir.), *cert. denied,* 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974), upheld an adjudication of civil contempt where a grand jury witness refused to answer questions derived from court-ordered electronic surveillance. The trial court declined to conduct a suppression hearing but did examine the orders *in camera* and determined that they ap-

---

**3.** Page references are to pages as numbered in Appellant's Brief and Appendix in the Supreme Court, Appellate Division.

**1218**

peared proper on their face. In affirming the adjudication, the Court said:

"We hold that in contempt proceedings initiated when a witness who has been granted 'derivative use' immunity refuses to answer questions propounded by a grand jury because he claims he is entitled to a hearing to ascertain whether the questions posed are the product of unlawful electronic surveillance the witness is not entitled to a plenary suppression hearing to test the legality of that surveillance. We hold that the refusal would be permissible only if there is an absence of a necessary court order or if there is ·a concession from the Government that the surveillance was not in conformity with statutory requirements or if there is a *prior* judicial adjudication that the surveillance was unlawful." [Emphasis in original] 491 F.2d at 1162.

The procedure devised by the District Court in *Persico,* of examining the court order *in camera* has been approved and followed by other federal courts. See *Droback v. United States,* 509 F.2d 625 (9th Cir.1974), *cert. denied* 421 U.S. 964, 95 S.Ct. 1389, 43 L.Ed.2d 650 (1975); *In re Grand Jury Proceedings—United States v. Worobyzt,* 522 F.2d 196, *rehearing denied* 525 F.2d 693 (5th Cir.1975).

Concededly, a facial examination of the court order may not reveal whether there was in fact probable cause for the issuance of the order, or whether the order was executed according to its terms, observing "minimization" and respecting privileged communications. Nevertheless, this procedure strikes a necessary balance between the rights of the witness and the needs of the grand jury.

■ Although a federal district court may be required to follow the *Persico* procedure, neither *Gelbard* nor federal statute requires that state courts observe a similar procedure. The state prosecutor's oral representation that electronic surveillance was employed, but conducted pursuant to court order, was constitutionally sufficient even if a different procedure would be required of federal prosecutors.[4]

■ We are mindful that *In re Persico* and other federal cases arose upon an adjudication of civil contempt, pursuant to 28 U.S.C. § 1826, during ongoing investigations by the grand jury. Here, the contempt was committed on December 19, 1972; petitioner was indicted on January 16, 1973, and the charge was not disposed of until petitioner's plea of guilty on June 18, 1975. Clearly, the disruption of the grand jury proceedings that would have been occasioned by a plenary suppression hearing is not the same as where the power of civil contempt is used to coerce the giving of testimony before a sitting grand jury. The very delay in the prosecution of these charges supports this conclusion. Nevertheless, the power of criminal contempt is lawfully available in aid of the state grand jury's investigations. Threatened with the possibility of a subsequent criminal prosecution, a witness will be more inclined to obey the lawful orders of the Court and grand jury. The determination of lawfulness required by *Gelbard* must be prompt even in this context, so that a witness may guide his conduct before the grand jury accordingly.

The second ground raised by petitioner is that the Fifth Amendment privilege against self-incrimination barred his indictment for criminal contempt by the same grand jury which heard his testimony under a grant of immunity. The New York Court of Appeals, considering other constitutional objections, has upheld the procedure followed here. *People v. Mulligan,* 29 N.Y.2d 20, 323 N.Y.S.2d 681, 272 N.E.2d 62 (1971). See also *People v. Ward,* 37 App.Div.2d 174, 323 N.Y.S.2d 316 (1st Dept.1971).

---

4. Although by its terms 18 U.S.C. § 2515 applies both to federal and state grand jury proceedings, 18 U.S.C. § 3504 applies only to federal ·proceedings. Therefore, the gloss placed on that statute in cases where federal prosecutors deny the use of electronic surveillance does not apply here. *Cf., United States v. Grusse,* 515 F.2d 157 (2d Cir.1975); *In re Buscaglia,* 518 F.2d 77 (2d Cir.1975); *United States v. Toscanino,* 500 F.2d 267, 281 (2d Cir.1974).

■ Section 50.10(1) of the N.Y.C.P.L. provides:

"A person who possesses . . . immunity may nevertheless be convicted of perjury as a result of having given false testimony in such legal proceeding, and may be convicted of or adjudged in contempt as a result of having contumaciously refused to give evidence therein."

See N.Y.C.P.L. §§ 190.35, 190.40. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) held that 18 U.S.C. § 6002, which granted more limited use immunity, was coextensive with the Fifth Amendment privilege although it too permitted prosecution for contempt. Since petitioner could be prosecuted for contempt, the only issue here is whether the same grand jury which heard his testimony could thereafter return a true bill of indictment for contempt.

A new York grand jury may indict a person only when

"(a) the evidence before it is legally sufficient to establish that such person committed such offense and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense." N.Y.C.P.L. § 190.65.

Any grand jury that would consider whether an accused committed criminal contempt would have to determine that there was probable cause to believe that he refused to answer a "legal and proper interrogatory" and did so refuse with the requisite criminal intent, that is "contumaciously and unlawfully." N.Y. Penal Law § 215.51.

■ Langella appeared before the grand jury and answered responsively to a meager number of questions. Under these circumstances, any grand jury that would consider indictment might need to examine the transcript of his appearance in its entirety to determine whether the questions were proper, and whether the witness acted with the requisite specific criminal intent. Since any grand jury could consider the transcript

in its entirety, and receive parol evidence of the witness' demeanor in the grand jury room, there is no reason why the grand jury before whom Langella testified under grant of immunity could not thereafter indict him for contempt, based in part on the jurors' own observation of his demeanor while refusing.

■ Petitioner contends that certain testimony which he gave must have prejudiced the grand jury. Langella testified that he was a professional gambler (A–53), that he had not filed income tax returns for a number of years (A–52),[5] and that he was a close friend of Alphonse Persico (A–100), a person alleged to have been involved in the subject murder investigation. There was sufficient evidence upon which the grand jury could indict for contempt, and there is no reasonable basis for inferring bias or prejudice on the part of the grand jurors. See *United States v. Polizzi,* 500 F.2d 856, 887–88 (9th Cir.1974), *cert. denied* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975), quoting *Silverthorne v. United States,* 400 F.2d 627, 634 (9th Cir.1968), *cert. denied* 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971):

"The quantum of evidence necessary to indict is not as great as that necessary to convict. If a grand jury is prejudiced by outside sources when in fact there is insufficient evidence to indict, the greatest safeguard to the liberty of the accused is the petit jury and the rules governing its determination of a defendant's guilt or innocence."

The safeguard against the prejudice claimed here would have been a trial on the merits. Petitioner admitted having committed the offense and thereby waived any objection that the indictment was founded on insufficient evidence and was a result of the bias or prejudice of the grand jurors.

*Goldberg v. United States,* 472 F.2d 513 (2d Cir.1973) and *United States v. Dornau,* 359 F.Supp. 684 (S.D.N.Y.1973), *rev'd* 491 F.2d 473 (2d Cir.1974), relied upon by peti-

---

**5.** Petitioner volunteered this information in an unresponsive answer to the question of what his occupation was.

tioner, are inapposite. In each of those cases, the Court was concerned with whether a defendant could be indicted by a grand jury, after it heard his testimony under a grant of use immunity, for transactions concerning which he had testified. Under those circumstances, to insure against direct and derivative use of the testimony, in accordance with the immunity conferred, it may be necessary to present the evidence to another grand jury. Here, the immunity conferred specifically excluded the crime of contempt.

Petitioner's final contention is that he was deprived of his Sixth Amendment right to counsel because he was not permitted to consult with his attorney when questions arose concerning the scope of his immunity. Petitioner contends that the limited right of a grand jury witness to consult with his counsel is grounded in the Sixth Amendment. There is reason to doubt that the term "criminal prosecution" used in the Sixth Amendment encompasses a grand jury investigation. See *Counselman v. Hitchcock*, 142 U.S. 547, 563, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). For purposes of this argument, however, we assume that the rights conferred upon a state grand jury witness by *People v. Ianniello*, 21 N.Y.2d 418, 288 N.Y.S.2d 462, 235 N.E.2d 439 (1968), are rights secured by the United States Constitution.

Langella conferred with his attorney prior to entering the grand jury room. After being advised that the grand jury was investigating the Gallo murder and that he was testifying under a grant of immunity except for the crimes of perjury and contempt, he was asked if he had any questions about his appearance before the grand jury and answered that he had none (A–41). Langella stated his name and address but when he was asked his occupation, he made his first request to confer with counsel and was excused from the room to permit him to discuss the question with his attorney. ██ In the approximately one hour and forty minutes that he was in the grand jury room, Langella was excused to confer with his attorney on four separate occasions for a total of approximately forty minutes. During the time that he was present before the grand jury, petitioner refused to answer the questions put to him and succeeded in his effort to engage in a fencing match with the Assistant District Attorney over his right to consult with counsel. At no point did the prosecutor deny petitioner's requests and petitioner did not answer any question without having the opportunity to confer with counsel. In sum, petitioner was not deprived of his right to confer with counsel during his appearance before the grand jury.

The petition for a writ of habeas corpus is in all respects denied.

Although we find his claims wanting in merit, they concern sensitive constitutional issues and present fair ground for litigation. Accordingly, pursuant to 28 U.S.C. § 2253 and Rule 22(b), F.R.App.P., petitioner is hereby granted a certificate that probable cause exists to maintain an appeal.

In view of the relatively short term of incarceration to which petitioner has been sentenced, and the possibility that he might be required to serve this sentence before the substantial issues raised upon this petition could be reviewed on appeal, petitioner's surrender will be stayed pending appeal, and he will remain enlarged on his existing bail unless the Court of Appeals shall direct otherwise. *Argro v. United States*, 505 F.2d 1374, 1377–78 (2d Cir.1974). The stay shall be conditioned upon a continued compliance with all existing bail arrangements applicable to petitioner.

So Ordered.