OPINION OF THE COURT
Bernard Dubin, J.
The People move to restrict an attorney from taking notes during his representation of a witness before the Grand Jury.
On December 14, 1978 the witness herein signed a waiver of immunity and testified before a Queens County Grand Jury. He exercised his right to have counsel present pursuant to the *455 newly enacted CPL 190.52, which provides that an "attorney may advise the witness”. During the course of testimony, the counsel took notes of what was transpiring. At the close of such testimony the foreman of the Grand Jury asked the attorney to surrender these notes. This request was declined.
The District Attorney now advances the argument that an attorney’s role before the Grand Jury is a most limited one, restricted simply to physically sitting next to a witness and orally advising him. The People further maintain that the attorney in this case overstepped the limits of his role by taking notes of what transpired before the Grand Jury and hence request this present order of confiscation, seeking the return of these notes.
In considering this application both sides rest their contentions on the language of CPL 190.52 (subd 2). This section states: "The attorney for such witness may be present with the witness in the grand jury room. The attorney may advise the witness, but may not otherwise take any part in the proceeding” (emphasis supplied). Hence, the issue facing this court is how must the phrase "advise the witness” be interpreted in light of the facts in this case.
In construing the meaning of a statute, several elements have been traditionally considered. Among such factors are (1) the history of the statute; (2) the purposes of the statute; and (3) the language of the statute.
I. The History of the Statute
Prior to September 1, 1978 the law regarding a witness’ right to have an attorney advise him in the Grand Jury room was simplicity itself. There was no such right. A "lawyer for a witness [was] not entitled to be present in the Grand Jury room” (People v Ianniello, 21 NY2d 418, 423). The reasoning behind this exclusion was that the purpose of a Grand Jury was investigatory and not prosecutorial. In theory, the Grand Jury’s actions were not directed against any specific witness and hence no one had the right to be "represented” by counsel during its deliberation. However, with the passage of time it became apparent that in actual practice a witness might well find himself in legal jeopardy by appearing before a Grand Jury. This would be particularly true in the case of one who was a potential defendant (People v Tomasello, 21 NY2d 143) or a person who possessed a right to immunity (People v *456 Steuding, 6 NY2d 214). This possibility of harm led to the Court of Appeals granting a witness the right to consult with an attorney outside of the presence of a jury room on the theory that "as a matter of fairness, government ought not compel individuals to make binding decisions concerning their legal rights in the enforced absence of counsel” (People v Ianniello, supra, p 424).
Yet while this limited right to counsel assisted a Grand Jury witness, situations still arose in which a prosecutor might, inadvertently or otherwise, overstep the legitimate bounds of his office to the detriment of a witness. While this might not affect the rights of those who were granted immunity, such improper questioning could virtually entrap one who elected to testify without being granted immunity. This would be particularly so in the areas of perjury and contempt of court (cf. People v Isaacson, 44 NY2d 511; People v Tyler, 62 AD2d 136). To curb such "abuses of the Grand Jury proceedings” and avoid the possibility of using this body unfairly, the Legislature enacted the present law authorizing a waiver-witness to bring counsel into the Grand Jury room with him for the purpose of receiving advice (see, in this connection, Bellacosa, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 190.52, 1978-1979 Pocket Part, p 84).
II. The Purpose of the Statute
In considering the purpose of the statute, this court turns to the executive memorandum set forth by the Governor on approving chapter 447 of the Laws of 1978 (McKinney’s Sess Laws of NY, 1978, p 1819). A pertinent section reads as follows (p 1820):
"Those who favor the bill believe it is required as a matter of basic fairness. They point out that witnesses who waive immunity are almost always either defendants or targets of the grand jury inquiry, and should have the benefit of effective legal counsel when they appear before the grand jury.
"Those who oppose the bill contend that the presence of an attorney will slow down or interfere with the grand jury process, and that the present law, which permits a grand jury witness to consult with his attorney outside the grand jury room, affords the witness sufficient protection.
"After considering the opinions expressed on both sides, I *457 am convinced by the arguments presented by the proponents of the bill that its approval is required as a matter of basic fairness, and that it will encourage public confidence in the grand jury system. Further more, I am convinced that the limited scope of the bill, the requirement that the attorney only advise the witness and not otherwise take part in the grand jury proceeding, and the power of the court to remove an attorney who acts improperly, are sufficient to insure that the effectiveness of grand jury proceedings will be not impaired.”
In analyzing the purpose of the bill, it is clear that the Legislature felt that as a matter of fundamental fairness a man should not go into battle unarmed and hence, directed that a waiver-witness should not go into the Grand Jury room without the protection of effective legal counsel. However a further reading of the statement also shows that this assistance is limited to the extent of: (1) the presence of counsel; (2) the fact that the attorney may only advise his witness; and (3) may not otherwise take part in Grand Jury proceedings. In addition, it might be noted that such representation should not interfere with the deliberations of the Grand Jury or slow down its process.
III. The Language of the Statute
The salient phrase relied upon by both sides to establish their contentions is "to advise the witness”. Unfortunately, this language is susceptible of rather broad interpretation or as the practice commentary (p 85) with charming (and possibly prophetic) understatement phrases it, this part of the statute is "[n]ot so clear and very likely to evolve as a bit of a problem”. In determining the construction and interpretation of phrases, section 234 of Statutes (McKinney’s Cons Laws of NY, Book 1) indicates that as a guiding principle "[dictionary definitions may be useful as guide posts in determining the sense with which a word was used in a statute, but they are not controlling.”
The court therefore first turns to Black’s Law Dictionary ([rev 4th ed], p 74), and finds that its meaning of the word "advise” indicates "[t]o give an opinion or counsel, or recommend a plan or course of action; also, to give notice”. Webster’s Third New International Dictionary (p 32) gives the following definitions or synonyms for "advise”: to look at; observe, consider; to give advice to, counsel; caution, warn, *458 recommend, to give information or notice to; inform, apprise. Thus, it would appear that the dictionary definitions of the word "advise” are simply to give an opinion, counsel or make recommendations. This would also be the normal or commonly accepted usage of such a word.
IV. Conclusion
This leads us to the present issue which this court will consider in light of the previously discussed history, purpose and statutory construction. The purpose of the statute is to afford a witness effective representation in the Grand Jury room. Counsel is limited to merely advising and barred from involving himself in any other aspect of the proceedings. In essence, two rights are involved in this new "attorney for witness” legislation and these were pointed out by the executive memorandum. The first is the right of an attorney to effectively represent his client; the second is the right of the Grand Jury to perform its functions expeditiously. Any evaluation of an attorney’s actions in the Grand Jury room must represent a balance between those two conflicting rights. Therefore in determining whether the taking of notes in the instant case falls under the category of "giving advice”, this court must weigh such conflicting interests. It will do so by utilizing the guidelines implicitly set forth in the executive order. This can best be accomplished by posing four questions: (1) Is the attorney’s act normally performed in the course of his duties — that is, would note taking be deemed ordinary legal practice? (2) Does the act assist the witness or is it necessary for effective legal representation? (3) Does such act impede the deliberation of the Grand Jury? (4) Would the attorney’s actions violate the secrecy of the Grand Jury?
Turning to the first guideline, common sense indicates that there is nothing unusual about an attorney taking notes. No one would think it strange to observe a lawyer making notations during the course of a trial or even taking notes outside of the Grand Jury room. Thus, in itself, note taking is a standard legal procedure.
As for the second point — the necessity of this act — it cannot be doubted that effective notes may prove beneficial to an attorney and assist him in accurately advising his client. Note taking would be particularly useful in those cases where a witness might be obliged to testify for an extended period of time, possibly several days, and where he runs the risk of *459 confusion or perjury due to the sheer volume of matter discussed. In this connection, it is well to keep in mind the fact that, "The Grand Jury process is not an entrapment procedure” (People v Doe, 95 Misc 2d 175, 177).
The third point deals with the effect of the attorney’s actions upon the Grand Jury. There is no evidence before this court that the notes of this attorney were so voluminous or extensive as to restrict, hinder or delay the Grand Jury. This is not a case such as People v Doe (supra), where the taking of notes disrupted the smooth functioning of the Grand Jury.
The final point to be considered is would the actions of the attorney in this case violate the privacy of the Grand Jury? It might be pointed out, first, in connection with this issue that both sides agree that the notes in question if authorized, constitute an attorney’s own work product. The District Attorney does not seek disclosure of their contents or in any way attempts to violate the confidentiality of the attorney-client relationship. Rather, the People maintain that these notes deal with the deliberations of the Grand Jury and their removal from the jury area would constitute a breach of privacy. Such reasoning seems specious to this court for two reasons. The first is that the witness himself is not prohibited from revealing what occurred during the course of his testimony since, "it has always been understood that the witness is at all times free to discuss his testimony outside the Grand Jury room” (People v Ianniello, 21 NY2d 418, 424, supra; People v Doe, supra). If then a witness could reveal everything that he said, it would certainly be a far less greater intrusion on privacy for an attorney to make a few pertinent notes on what he heard. Second, in any event, since the attorney is entitled to a complete transcript of his client’s testimony before the Grand Jury pursuant to CPL 240.20 (subd 1, par [a]) in the event of indictment it would serve no practical purpose to deny him his present work product.
Therefore, based on the history, the purpose and the plain meaning of the language, this court finds that the act of a counsel in taking brief and reasonable notes during the course of a witness’ testimony falls within the duties of an attorney in advising his client and rejects the People’s contention that it violates the statute. The application for confiscation is denied and the District Attorney is directed to return counsel’s notes to him.