Fuchsberg, J.
(dissenting). Right from the outset I would stress the compelling fact that the Grand Jury proceedings with which we are concerned here were properly denominated "extraordinary”. They were not undertaken under the auspices of a District Attorney acting within the mainstream of the system on which we rely for enforcement of our criminal law — as were those in all the cases in the majority opinion— but rather by a special prosecutor designated by the Attorney-General at the behest of the Governor pursuant to subdivision 2 of section 63 of the Executive Law. Given that the nature of the special prosecutor’s office subjects him, as hereinafter indicated, to less restraint than a District Attorney, it is especially important in relation to citizens’ rights that his authority be spelled out with clarity.
The distinction is of paramount importance. For, in contrast *25 to a District Attorney, a constitutional officer who must be chosen by the electors of a county (NY Const, art XIII, § 13), the appointed special prosecutor, on statutory authority only, carries out an ad hoc assignment for the conduct of which he is not subject to popular review. The lines of accountability, of course, run, in fact if not always in form, to the Governor, a purely executive and by no means judicial officeholder. So, in other than a Panglossian world, there will generally be perceived a risk that the supersedure will carry in its train no guarantee that politics may not intrude on the prosecutory function (see Note, The Common Law Power of State Attorneys General to Supersede Local Prosecutors, 60 Yale LJ 559, 563).
Relevant also to the nature of the power wielded in this case is the difference between the office of District Attorney, pregnant with quasi-judicial obligations, including the wide latitude to determine whom whether and how to prosecute (see People v Fielding, 158 NY 542, 547; Matter of Hassan v Magistrates’ Ct. of City of N. Y., 20 Misc 2d 509, 511-512 [Shapiro, J.]), and that of the special prosecutor, charged as he is with a particular mission. Indeed, typically, the appointment of the special prosecutor occurs only under extraordinary circumstances which point to some identifiable subject that the appointing authority decides to make the object of probing investigation. In such a targeted inquiry, human experience teaches that, since the success of the appointed prosecutor in some instances may be measured in the public eye in terms of whether the inquiry results in the filing of criminal charges (cf. Matter of Cunningham v Nadjari, 39 NY2d 314, 318; People v Mackell, 47 AD2d 209, affd 40 NY2d 59), he may be tempted, perhaps subconsciously, not to exercise, on sense-of-justice considerations, that degree of discretion to decline to prosecute which is the normal prerogative of any District Attorney. (See Frampton, Some Practical and Ethical Problems of Prosecuting Public Officials, 36 Md L Rev 5, 15.)
So, although the appointment of a special prosecutor has many real advantages — for example, when accusations of corruption taint the investigatory ability of the District Attorney or when the manpower or other resources of individual District Attorneys are inadequate to deal with multicounty criminal activity — his position is simply not subject to the same restraints that act on the District Attorney. Coupled *26 with this are the aggregate of State resources which the special prosecutor will have at his disposal and the everpresent potential that the tremendous investigatory power of the Grand Jury may be employed in derogation of that body’s coordinate function as a shield for individual rights (see Abuse of Power, Staff Report of the Codes Committee of the NY State Assembly [1976], pp 47-50, reprinted in 11 Trial Lawyers Q 99-110). In short, it must always be borne in mind, as the majority seems to forget, that, because of these differences, the substitution of supersedure for the regular channels of prosecution may at times provide occasion for what Justice Brandéis labeled "[t]he greatest dangers to liberty”, namely, the "insidious encroachment by men of zeal, well-meaning but without understanding” (Olmstead v United States, 277 US 438, 479 [dissenting opn]).
Hence, given that concerns of this nature will attend every invocation by the executive of his supersedure power, and that perception may be nearly as important as reality, legislative recognition of the need for some meaningful circumscription on the scope of that authority comes as no surprise. This is reflected in the cautionary provision of subdivision 2 of section 63, which expressly requires that the special prosecutor’s jurisdiction be limited to such "criminal actions and proceedings as shall be speciñed” in the Governor’s executive order (emphasis mine).
It therefore is regrettable that the majority, while conceding that the statutory wording was aimed at delimiting the compass of the authority of the Attorney-General and his designee, the special prosecutor, simultaneously deprives the "specificity” requirement of all practical force by holding that it is satisfied as long as it "inform[s] the Attorney-General of the range of his anticipated duties” (p 18). Thus, goes the majority opinion, the executive order’s reference merely to a confidential numbered file in the office of the Special Nursing Home Prosecutor suffices to make the Attorney-General aware of the scope of the supersedure. Quite clearly, however, this interpretation leaves the statute’s language without meaning since the Governor would, perforce, convey at least this degree of information by the very act of transferring the authority. In other words, the Attorney-General (and the special prosecutor) will always know the range of their powers because at least the substance and, in almost every case, presumably the contents of the file will have been made available to them.
*27 In my view the wording of the statute has a much more reasonable meaning and that is to apprise not only the special prosecutor, but the superseded District Attorney and Judges, Grand Jurors and witnesses of the transfer of authority as well as its boundaries (People ex rel. Osborne v Board of Supervisors of County of Westchester, 168 App Div 765, 767). Without at least some knowledge by the parties of the area of interest in which the special prosecutor has been authorized to act, the extent of his powers cannot be readily ascertained nor, concomitantly, can the invasion of rights be detected. Noteworthy in this regard is the authoritative recommendation of the American Bar Association Project on Standards for Criminal Justice that, to safeguard against arbitrariness, the grounds for a supersedure should be placed on the record by filing them with an official such as the Secretary of State (ABA Standards Relating To The Prosecution Function [Approved Draft], § 2.10, subd [a], Commentary, at p 75). However, we need only say that here it is all too clear that the enigmatic reference in Executive Order No. 78 to a confidential case file identified only by number is not a device calculated to set meaningful limits on the special prosecutor’s power.
For one thing, as the majority candidly admits, the contents of such an investigative file are "subject to almost inevitable flux” (p 18). This makes well-nigh impossible any intelligent scrutiny — except by those acting at the behest of the special prosecutor himself — directed at distinguishing the contents of the file as of the time of the executive order from any post hoc additions or deletions that could conceivably expand the nature of the investigation, even as to persons who were in no way connected with the one against whom the investigation was originally authorized.
But, as most pertinent here, the specification requirement imposed by the statute serves another, albeit related, purpose: to inform the witness summoned before the Grand Jury of the nature of the investigation. To do so is also consonant with the long-standing principle that a Grand Jury witness has the right to refuse in good faith to answer inquiries that have no bearing on the subject matter of the investigation (People v Ianniello, 21 NY2d 418, 425; see Matter of Koota v Colombo, 17 NY2d 147, 150). It cannot be gainsaid that this right takes on added importance in the context of this extraordinary *28 Grand Jury proceeding, conducted under a special prosecutor who purports to act pursuant to a supersedure order.
Yet, how is it that the mere citation to a confidential prosecutor’s file can be thought to afford the witness the means of ascertaining the propriety of the questions asked? The obvious answer is that it cannot. For, how indeed will the witness, informed only in such arcane terms, as a practical matter ever possess what the majority apparently characterizes as the necessary precondition for invoking the assistance of the court to safeguard this right — "a reasonable suspicion” that the line of questioning is irrelevant (p 21)? Certainly, it is no answer to say that the witness at her peril must hazard a guess at the relevancy of a particular question or series of questions and, if she chooses to refuse to respond, be forced, under pain of contempt, to await judicial review after the court’s in camera inspection of the authority-defining file. Moreover, to the extent that the witness must testify "in the dark”, so to speak, her right to consult with counsel in the Grand Jury room (see CPL 190.52) is made nugatory, a result that can only be viewed as completely at odds with the thrust of our Legislature’s recent efforts to enhance the Grand Jury’s historic role as a bulwark against prosecutory abuse (see, generally, Abuse of Power, Staff Report of the Codes Committee of the NY State Assembly [1976]).
Nor may the defective specification in the executive order be cured, as the majority seems to suggest, by the special prosecutor’s recitation, in advance of the witness’ testimony, of his construction of the nature and scope of his authority. While, admittedly, it may be good practice to so advise a witness before even an ordinary Grand Jury (see ABA Standards Relating To The Prosecution Function [Approved Draft], § 3.6, subd [d]; cf. People v Ianniello, 21 NY2d 418, 426, supra), the supersedure statute’s special requirement for "specificity” is telling in the command it exacts as to the contents of the order of appointment. And, even if the prosecutor could permissibly remedy the defect by some preliminary disclosure of the bounds of the inquiry before the Grand Jury, the statement he made to the witness in this case was so vague as to be utterly useless. While, in deference to the constraints imposed by the confidential character of an ongoing Grand Jury investigation, this dissent refrains from setting out the special prosecutor’s statement either in substance or in haec verba, examination of its text reveals that, in generalities *29 which could hardly be more sweeping, it was only incrementally more informative than the terse reference to the numbered case file. Suffice it to say that its statement of geographical location was so hedged with words of limitation as to be practically meaningless, that it specified no time frame and that it provided no particularization of the claimed area of criminal activity (compare People v Ianniello, 21 NY2d 418, 426, supra [purpose of Grand Jury investigation described to witness as to " 'determine if there was in existence a conspiracy to bribe or give unlawful fees to public officials of the City of New York, to wit, the Police Department’ ”]).
True, there is a need for secrecy in what at times may be politically sensitive investigatory proceedings, both to safeguard the reputations of as yet uncharged persons and to protect the integrity of the inquiry itself (see CPL 190.50, subd 7; and Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A; Frampton, Some Practical and Ethical Problems of Prosecuting Public Officials, 36 Md L Rev 5, 10-15). Thus, the requirement of specificity imposed by subdivision 3 of section 63 should not be construed to compel the framing of the special prosecutor’s authority in terms of evidentiary material, for instance. However, some reasonable accommodation may be arrived at that will at once preserve the confidentiality of the investigation yet define the confines of the special prosecutor’s authority with sufficient clarity so that "the subject of the investigation [is] susceptible of intelligent estimate” by both the witness and the Judge (Matter of Spector v Allen, 281 NY 251, 258). Notably, in the case before us, there was no claim of a need for secrecy so extraordinary as to justify (if, indeed, there could be justification for) the total absence of any specification of the nature of the inquiry. Nor was any urged to this court or the courts below.
Finally, a word about the concurrence. We cannot accept its concept that the witness is sufficiently protected because she has transactional immunity and will have an eventual right to be heard on the issue of relevance when she is charged with contempt. In view of the fact that the Legislature’s requirement of specificity necessarily had as one of its purposes the protection of a witness against just such burdens, it is neither fair nor proper to impose the fiscal and mental, if not physical, expenditure of human and material resources that such a test of relevancy involves. And, in light of the fact that the concurring opinion takes note of widespread criticism of the *30 Grand. Jury system per se, in circumstances manifesting one of that system’s greatest potentials for abuse it seems to me particularly appropriate that the statutory prescription for specificity be taken at its word.*
In sum, because the use of the extraordinary supersedure mechanism carries very real risk, it is of the utmost importance that the procedural safeguards contemplated by subdivision 2 of section 63 of the Executive Law be respected in substance and not merely in form. Since the executive order here is inconsonant with the specificity requirement, in the absence of appropriate and timely definition of its prosecutory authority to the witness, vindication of the statutory safeguards mandates quashing the subpoena. The order of the Appellate Division therefore should be modified to accomplish that result.
Chief Judge Cooke and Judge Gabrielli concur with Judge Jasen; Judge Wachtler concurs in result in a separate opinion; Judge Fuchsberg dissents and votes to reverse in another opinion in which Judges Jones and Meyer concur.
Order affirmed.

 I am also impelled to note that we could not agree if Judge Jasen’s opinion were to be read as expressing a blanket approval of the Grand Jury system.