**William CARRION, Petitioner,**

v.

**Charles SCULLY, Warden, Respondent.**

No. 81 Civ. 606.

United States District Court,
S. D. New York.

July 13, 1981.

William Carrion, pro se.

Denis Dillon, Dist. Atty., Nassau County, Mineola, N. Y., for respondent; William C. Donnino, Judith K. Rubinstein, Anthony J. Girese, Asst. Dist. Attys., Mineola, N. Y., of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Petitioner, now serving a prison sentence of from 3 to 6 years following his conviction for burglary in the second degree by a jury verdict in Nassau County, New York, petitions for his release by a federal writ of habeas corpus based upon alleged violation of his federal constitutional rights. Upon appeal to the Appellate Division, Second Judicial Department, his conviction was unanimously affirmed.[1] Thereafter leave to appeal was denied.[2]

Petitioner alleges that his conviction was obtained (1) in violation of his privilege against self-incrimination and due process rights based on "impeachment of [his] defense with his post-arrest silence" and (2) due to "the unconstitutional failure of the prosecution to disclose to the defendant," an apparent reference to Brady[3] material.

As to his first claim—the "impeachment of [his] defense with his post-arrest silence" —petitioner acknowledged that upon his arrest a police officer advised him of his Miranda rights. During his appearance before the Grand Jury, referred to hereafter, he testified that he responded to the Miranda warning, "I don't have to make any type of

1. 66 A.D.2d 1032, 411 N.Y.S.2d 478 (2d Dep't 1978).

2. 46 N.Y.2d 914, 414 N.Y.S.2d 1042, 388 N.E.2d 352 (1979).

3. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

statement until my attorney was present. So I did not talk."[4]

Following his arrest, upon advice of counsel, petitioner voluntarily appeared before the Grand Jury and testified under a waiver of immunity. He thereby effectively waived his right against self-incrimination before that body.[5] The Grand Jury was investigating the alleged crime here at issue and in due course an indictment was returned against petitioner.

Upon the trial, petitioner did not testify in his defense. One of the witnesses he called, however, testified that he had been fishing with petitioner early in the day of the burglary (which occurred in the evening), and on that occasion petitioner had cut his arm or hand. Petitioner, in his testimony before the Grand Jury, had given an entirely different version of the events leading to this cut, namely, that it had been sustained when he accidentally broke a window at the burglarized premises while there on an innocent mission, looking for a lost child. The state, in rebuttal, to impeach petitioner's witness and also as an admission by the defendant, proposed to introduce into evidence petitioners' Grand Jury testimony on the origins of the cut.[6] In light of this proposal, petitioner's counsel sought to introduce a redacted version of petitioner's entire grand jury testimony. After extensive consultation among petitioner's attorney, the prosecution, and the Court, portions of the grand jury testimony were redacted, including references to defendant's prior criminal record.[7] This redacted testimony was then read to the trial jury.

Part of the testimony read to the jury focuses on petitioner's failure to apprise others of the reason for his presence in the allegedly burglarized house until some time after his arrest. In particular, the following interchange took place:

Q: And when did you ever let any police or anybody else, except your attorney, know that you were in that house looking for the little kid?

A: I didn't.

Q: Will you tell the jury why you never told anybody?

A: About what?

Q: That you were in the house looking for the kid.

A: Because I thought the matter was already taken care of because the kid came home. We found him. He was at a friend's house. Everything was okay, and I did not go into the house to rob anything or take anything. I went into the house because I was concerned for the kid.[8]

Petitioner claims that this line of questioning stressed his failure to tell his exculpatory story to the police after his arrest in violation of his privilege against self-incrimination as established in *Doyle v. Ohio.*[9]

In *Doyle,* each defendant presented testimony at trial of an alleged "frame-up" that tended to exonerate him. On cross-examination, in an effort to impeach these stories, the prosecutor subjected each defendant to a relentless, wide-ranging set of questions concerning his failure to reveal the exculpatory story to arresting officers. The de-

---

**4.** Trial Record at 683–85.

**5.** *See People v. Ianniello,* 21 N.Y.2d 418, 424–25, 288 N.Y.S.2d 462, 468, 235 N.E.2d 439, 443, *cert. denied,* 393 U.S. 827, 89 S.Ct. 90, 21 L.Ed.2d 98 (1968).

**6.** *See United States v. Ruffin,* 575 F.2d 346, 357 (2d Cir. 1978) (proper for FBI agent to testify in rebuttal where the "purpose of the testimony was to rebut directly . . . [the] defense of insubstantial tax liability by showing that [defendant] had received a constructive dividend . . ."); *United States v. Johnson,* 208 F.2d 404, 406 (2d Cir. 1953), *cert. denied,* 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1080 (1954); *Marshall v.*

*Davies,* 78 N.Y. 414 (1879) (rebuttal evidence is both "evidence which contradicts the witnesses on the opposite side and corroborates those of the party who began . . . [and] evidence in denial of some affirmative fact which the answering party has endeavored to prove").

**7.** *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

**8.** Tr. at 684–85.

**9.** 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

fendants were convicted. In reversing these convictions, the *Doyle* court held that the due process clause forbids the prosecution to use a defendant's silence after he has been given his *Miranda* warnings to impeach an exculpatory story offered by the defendant at his trial.

■ In the instant case, petitioner did not testify at trial and obviously was not subject to cross-examination on his post-arrest silence, which at once distinguishes this case from *Doyle*. There is thus a substantial question whether petitioner's rights under *Doyle* were violated when the above-quoted portion of his grand jury testimony was read at trial.[10] Nevertheless, assuming that a *Doyle* violation occurred, the resulting error was harmless beyond a reasonable doubt.[11] Here, unlike in *Doyle*, there was no relentless, persistent or hammering questioning of petitioner's failure to give his exculpatory explanation to the arresting officer or his decision to remain silent following his receipt of the *Miranda* warnings. Rather, the questions on petitioner's silence were brief and passing, and no mention of petitioner's post-arrest silence was made by the prosecution in its summation.

Indeed, the lack of substantial harm to petitioner from the reading of the relevant testimony was highlighted by his counsel in summation when he relied heavily on petitioner's grand jury testimony, argued that "the entire grand jury evidence is favorable to the [defendant]," and suggested that "the only way you can tell what really the

defendant had to say about this incident ... [is] by taking this into your jury room and reading it."[12] Moreover, by having his version of the incident conveyed through a reading of his redacted grand jury testimony rather than through his testimony at trial, petitioner was able to present his defense to the jury without subjecting himself to cross-examination and exposure of his past criminal record. A word-by-word reading of the record establishes that his explanation for his presence in the burglarized house, to state it mildly, bordered on the absurd and was "transparently frivolous" and "implausible."[13] The evidence of petitioner's guilt presented at trial was so overwhelming that the jury would not have been swayed from its decision to convict had the testimony of petitioner's post-arrest silence been excluded.[14]

■ Furthermore, *Wainwright v. Sykes*[15] bars petitioner's claim since no specific objection to petitioner's grand jury testimony based on constitutional grounds was advanced.[16] Under *Wainwright*, the failure to make appropriate objection under New York's contemporaneous objection rule,[17] absent a showing of "cause" for failure to do so and "prejudice" arising from the admission of the evidence for the purpose indicated, forecloses habeas corpus review.[18] Petitioner failed to object at trial to the reading of the grand jury testimony that he now challenges. The initial offer by the prosecution of petitioner's grand

---

10. *See Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).

11. *Chapman v. Calif.*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *see Harrington v. Calif.*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

12. Tr. at 768.

13. *Cf. United States v. Nunez-Rios*, 622 F.2d 1093, 1101 (2d Cir. 1980); *Chapman v. United States*, 547 F.2d 1240, 1250 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977).

14. *See United States v. Nunez-Rios*, 622 F.2d 1093, 1101 (2d Cir. 1980); *Campanale v. Harris*, 79 Civ. 1726 (S.D.N.Y. Mar. 26, 1981); *Broadwater v. Dunham*, 479 F.Supp. 1097, 1101 (E.D.

N.Y.1979); *Taylor v. Dalsheim*, 459 F.Supp. 260, 263–64 (S.D.N.Y.1978).

15. 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1970).

16. The lack of specific objection was conceded by petitioner's appellate counsel, but he urged that general objections are sufficient "to preserve the error for review." Brief for Defendant-Appellant at 23 n.1. *But see Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

17. NYCPL § 470.05(2).

18. *See Washington v. Harris*, 650 F.2d 447 at 451 (2d Cir. 1981).

jury testimony was limited to his version of how he had sustained the cut to his arm, to "one specific point of his grand jury testimony," [19] to contradict the defense witness' "fishing" testimony. When the trial judge indicated acquiescence and that only one portion would be admitted in evidence, defense counsel responded: "I want the whole record read to the grand jury. One can't pick out a question and answer and not let the grand jury testimony come in." [20] Then followed the extended discussions by the Court and counsel, as a result of which substantial portions of petitioner's explanation for his presence in the burglarized home, exculpatory in nature, were admitted, and other portions, including his extensive criminal record, were redacted. At no time did petitioner make any objection or contention that petitioner's "post-arrest silence" under *Miranda* was violated or that any constitutional right was being impinged upon by the reading of any portion of his grand jury testimony to the trial jurors. Moreover, the admission of the redacted transcript as a whole was not to petitioner's "prejudice" but to his decided advantage. As already noted, without taking the witness stand and subjecting himself to cross-examination, he was able to present his explanation to the trial jury.

As to the further claim of failure to disclose material to defendant, there is no statement indicating what is referred to or what it is alleged would come within the *Brady* concept. Petitioner simply refers to the general duty of a prosecutor to disclose matters favorable to the defense. There is no statement as to any such matter known by the prosecution that allegedly was withheld and which petitioner was entitled to have disclosed to him. The petition for writ of habeas corpus is denied.

So ordered.

19. Tr. at 602.

20. Tr. at 601. Upon admission of the redacted material, the Court noted it was being admitted with the consent of the defendant (Tr. at 660). However, it is unclear from the record whether

this was a consent to the admission of the testimony or a consent to waive having the grand jury reporter read from his original notes.