BEATRICE IANNIELLO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ianniello v. Commissioner
Docket No. 37791-86
United States Tax Court
T.C. Memo 1991-415; 1991 Tax Ct. Memo LEXIS 464; 62 T.C.M. (CCH) 592; T.C.M. (RIA) 91415; August 22, 1991, Filed *464 Decision will be entered under Rule 155. Held: Petitioner is relieved of liability for part of the deficiency for the 1981 taxable year under the provisions of sec. 6013(e). Richard H. Champion and John L. Pollok, for the petitioner. Elise Frost Alair, for the respondent. WHITAKER, Judge. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in Beatrice and Matthew Ianniello's Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b) [1]
1981
$ 131,878.50
$ 65,939.25
Mrs. Ianniello, petitioner, filed a petition with this Court in which she asserted that she was entitled to be relieved from liability pursuant to section 6013(e). Respondent concedes that petitioner is not liable for the addition to tax under section 6653(b). After concessions and stipulated settlements, the remaining issue *465 for decision is whether or not petitioner should be relieved of liability for the deficiency for the 1981 taxable year under the provisions of section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, stipulation of settlement, amended stipulation of settlement, second stipulation of settlement, and attached exhibits are incorporated herein by this reference. Petitioner resided in Old Westbury, New York, at the time her petition was filed. Petitioner signed and filed the joint Federal income tax return for the 1981 taxable year with her husband, Matthew Ianniello, with the Brookhaven Service Center, Holtsville, New York. They reported their income and deductions for the 1981 taxable year on the basis of cash receipts and disbursements. Petitioner was born in London, England, in 1926. Petitioner completed grammar school in England. She never attended high school. She came to the United States in 1948. Petitioner was married prior to her marriage with Mr. Ianniello and had three children in this earlier marriage. Petitioner divorced her first husband in 1953. In the divorce settlement, she received money for child *466 support. She invested $ 5,000 of this money in penny stocks. An investment firm, Shanker & Loeb, bought and sold the penny stocks for petitioner. Later, she purchased a home in Bayside. After her divorce and prior to her marriage with Mr. Ianniello, petitioner was employed for 5 years as a laboratory technician at Pfizer Laboratories, a medical factory. As a laboratory technician, she inspected and bottled pills. She was later employed as a hat check girl and as a hostess at a restaurant. Petitioner and Mr. Ianniello were married on January 14, 1964, in Jamaica, New York, and have been married since that date. They have two children, Kim and Matthew. Since their marriage, petitioner has been occupied mainly as a housewife and mother. Mr. Ianniello supported all five children. The children went to public schools. Petitioner did not work outside the home while she was married to Mr. Ianniello. From 1965 to 1982 her husband paid the household expenses. Petitioner received a weekly allowance of $ 400 in 1981. Petitioner bought food and miscellaneous items for the household with that money. Her husband paid for the children's clothing, medical, and educational expenses. *467 He also paid all the other expenses of the family, including mortgage payments, taxes, insurance, home repairs, and improvements. In 1981 Mr. and Mrs. Ianniello and three of their children resided at 10 Tredwell Drive, Old Westbury, New York. This home is in an exclusive area. They acquired this residence on June 30, 1966. Petitioner contributed $ 25,000 toward this purchase and borrowed the remainder of the purchase price ($ 50,000). Petitioner's contribution came from the proceeds from the sale of the Bayside house. Petitioner and her husband acquired a condominium located at 2751 South Ocean Drive in Hollywood Beach, Florida, on January 3, 1974, for $ 88,000 and mortgaged the property for $ 66,750. This property is a two-bedroom condominium on the ocean. Mr. Ianniello also owned a farm located in Kingwood Township, Hunterdon County, New Jersey. Her husband told petitioner that the farm cost $ 17,000 or $ 18,000 in 1960. Petitioner has stayed there on various weekends. The farm has a three-bedroom house and a few horses. Her oldest son stayed on the farm in 1981. On April 27, 1988, they transferred the ownership of their home in New York to petitioner, and their children, *468 Matthew Ianniello, Jr., and Kim Marie Ianniello. Mr. Ianniello transferred the ownership of the farm to petitioner and their children, Matthew Ianniello, Jr., and Kim Marie Ianniello in April 1988. The farm was valued at $ 395,000 by Roland D. Boehm, I.F.A., as of July 5, 1988. Other than the transfer of the above-mentioned properties into petitioner's name, petitioner has not received any other gifts, jewels, fur coats, stocks, certificates of deposit, or other valuable commodities from her husband since 1980. Petitioner received birthday, anniversary, and Christmas gifts from her husband on occasion. She never purchased a car, but drove a car which was either leased or owned by her husband. In 1981 she drove a Chevrolet. In 1981 Mr. Ianniello and Benjamin Cohen were the owners of C & I Trading. They were engaged in selling and obtaining retail businesses for sale. In 1981 they were also involved in the garbage business. Petitioner knew that her husband was involved in these businesses. She did not have any interest in either of these businesses. Prior to 1985 petitioner never heard of any of the businesses her husband was connected with which gave rise to the deficiency. *469 Mr. Ianniello never discussed business with his wife. Business was never discussed at family gatherings. In 1981 petitioner did not know her husband's business associates other than the Cohens whom she had known for approximately 20 years. Petitioner was not involved in the preparation of the family's tax returns. Generally, petitioner's husband would give petitioner the tax return and tell her to sign the return. Petitioner did not ask any questions about or review the 1981 tax return. Petitioner did not know the source of her husband's income reported on the 1981 tax return, other than the income from C & I Trading. [2]
*470 In 1968, 1971, and 1985, Mr. Ianniello was indicted on various charges. On June 15, 1967, an indictment against Mr. Ianniello for criminal contempt was dismissed by the New York State appellate court in New York v. Matthew Ianniello, 27 A.D.2d 504, 280 N.Y.S.2d 852 (1967). On February 21, 1968, the reinstatement of the indictment against Mr. Ianniello for criminal contempt was upheld by the New York State appellate court in New York v. Matthew Ianniello, 21 N.Y.2d 418, 235 N.E.2d 439, 288 N.Y.S.2d 462 (1968). On February 20, 1975, Mr. Ianniello's conviction for criminal contempt was upheld by the New York State appellate court in New York v. Matthew Ianniello, 36 N.Y.2d 137, 325 N.E.2d 146, 365 N.Y.S.2d 821 (1975). On April 28, 1971, Mr. Ianniello and Mr. Cohen were indicted in the United States District Court for the Southern District of Florida for conspiring to defraud the United States during the period beginning on or about June 1, 1963, continuously until the date of the indictment, April 28, 1971, in violation of 18 U.S.C. section 371, including alleged affirmative acts under sections 7201 and 7206(1). The indictment contains no reference to petitioner. *471 The indictment was subsequently transferred to the United States District Court for the Eastern District of New York. Following a jury trial, concluding on June 21, 1973, Mr. Ianniello and Mr. Cohen were acquitted of all charges included in the indictment. On August 5, 1985, Mr. Ianniello, together with 13 other defendants, was indicted in part for tax evasion under section 7201, and conspiracy to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service under 18 U.S.C. section 371. Petitioner is not mentioned in this indictment. This indictment included counts for tax evasion with respect to the tax returns of P and G Funding, a New York corporation doing business during the 1981 taxable year as the "Mardi Gras," a bar located at 1599 Broadway, in the Times Square area of Manhattan. On December 30, 1985, the jury returned a guilty verdict against Mr. Ianniello on, inter alia, two counts of tax evasion for preparing and filing false and fraudulent corporate income tax returns of P and G Funding for the 1979 and 1980 taxable years in violation of section 7201 and four counts of tax evasion for preparing and *472 filing false and fraudulent personal income tax returns for the 1979, 1980, 1981, and 1982 taxable years in violation of section 7201. The conviction was based, in part, on the finding that over the 4-year period, 1979 through 1982, Mr. Ianniello, Paul Gelb, and Mr. Cohen received $ 2,000,000 from P and G Funding, which they shared equally and which they failed to report on their respective Federal income tax returns. The jury returned a special verdict of forfeiture against Mr. Ianniello for the portion of that amount attributable to him. The United States District Court for the Southern District of New York entered a judgment of conviction against Mr. Ianniello. On December 4, 1986, the United States Court of Appeals for the Second Circuit affirmed Mr. Ianniello's conviction in United States v. Ianniello, 808 F.2d 184 (2d Cir. 1986). Petitioner first learned that her husband had legal problems around 1985 or later. Petitioner's husband did not discuss these legal problems with his wife either at the time of the trial or later. On the 1981 tax return, the Ianniellos reported gross income of $ 121,271, adjustments to income, itemized deductions, and exemptions *473 totaling $ 41,698, leaving taxable income of $ 79,973. In the statutory notice of deficiency, respondent, after adjustments, determined that the Ianniello's taxable income totaled $ 337,114. The deficiency determined by respondent is based on the following adjustments to the joint Federal income tax liability of petitioner and her husband for the 1981 taxable year: Adjustment
Amount
Capital Gains (F.I.C. Associates)
$ (15,526)
Subchapter S Loss (Oswego Electronics)
54,000 Subchapter S Loss (Gamma Computers)
52,000 Unreported Income (P and G Funding)
166,667 Total
$ 257,141 Respondent disallowed the Ianniellos' distributive shares of losses with respect to Oswego Electronics (Oswego) and Gamma Computers (Gamma). Oswego and Gamma are part of respondent's First World Investors tax shelter project. The Oswego and Gamma issues have been settled in accordance with an Amended Stipulation of Settlement. In the Amended Stipulation of Settlement, the parties agreed that petitioner would be jointly and severally entitled, with Mr. Ianniello, in the 1981 taxable year, to an ordinary deduction of: $ 10,500, which represents 75 percent of the cash expended in acquiring *474 Oswego and $ 10,125, which represents 75 percent of the cash expended in acquiring Gamma, should it be determined that petitioner is not entitled to innocent spouse relief with respect to these losses. The parties also agreed that petitioner is not entitled to any other losses, deductions, or credits resulting from other interests in Oswego and Gamma for the 1981 taxable year, except as stated above. Pursuant to a Second Stipulation of Settlement, the parties agree that petitioner is entitled to a decrease in capital gains in regard to F.I.C. Associates in the amount of $ 15,526 for the 1981 taxable year, as determined in the statutory notice. In the statutory notice, respondent increased the Ianniellos' gross income by $ 166,667, which represents the portion of the $ 2,000,000 found by the court to be unreported income from P and G Funding. The parties stipulated that the $ 166,667 is attributable to Mr. Ianniello for the 1981 taxable year. The parties stipulated that before the application of section 6013(e), there is a deficiency due from petitioner in the amount of $ 131,878.50 which is attributable to these adjustments. At the trial in this case, petitioner did not call *475 her husband to testify. OPINION Section 6013(a) allows a husband and wife to make a single return jointly of Federal income taxes even though one of the spouses has neither gross income nor deductions. Section 6013(d)(3) provides that in the case of a joint return, the liability of the spouses with respect to the tax shall be joint and several. However, section 6013(e), as amended by the Deficit Reduction Act of 1984, [3] provides a certain measure of relief if the following four conditions are met by the Taxpayer claiming innocent spouse status: (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,
Sec. 6013(e)(1)(A) through (D). *476 Petitioner bears the burden of proving that she is entitled to relief under the innocent spouse provisions. See Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Bokum v. Commissioner, 94 T.C. 126, 138 (1990); Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971); Rule 142(a). The failure to meet any element precludes an individual from qualifying as an innocent spouse. Bokum v. Commissioner, supra at 138. A joint return was filed by Mr. Ianniello and petitioner for the 1981 taxable year. Respondent concedes that the first requirement of section 6013(e)(1)(A) is met. Respondent contends, however, that the other requirements for relief under section 6013(e) have not been met with respect to both the losses and the unreported income. The second requirement for relief under section 6013(e) is that petitioner must prove that there is a substantial understatement of tax on the 1981 tax return which is attributable to grossly erroneous items of Mr. Ianniello. Sec. 6013(e)(1)(B). A substantial understatement is defined in section 6013(e)(3) as "any understatement (as defined in section 6661(b)(2)(A)) which *477 exceeds $ 500." Grossly erroneous items as defined in section 6013(e)(2) means: (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.
Individual items of income or deductions may be separately considered in determining whether there is a substantial understatement of tax attributable to grossly erroneous items of one spouse. See Purcell v. Commissioner, 86 T.C. 228, 235-236 n.3 (1986), affd. 826 F.2d 470 (6th Cir. 1987). We will determine whether petitioner is an innocent spouse with respect to each item. With respect to income, any omission of gross income constitutes such an error. Sec. 6013(e)(2)(A). The parties have stipulated that $ 166,667, which represents the portion of the $ 2,000,000 from P and G Funding, is attributable to Mr. Ianniello for the 1981 taxable year. This income was omitted from the 1981 tax return. Therefore, this amount is a grossly erroneous item. The understatement of tax attributable to this item exceeds $ 500. Therefore, the second requirement *478 for relief is met with respect to this item. With respect to the claimed losses, petitioner must demonstrate that these claimed losses have no basis in law or fact. Sec. 6013(e)(2)(B). In Douglas v. Commissioner, 86 T.C. 758, 762-763 (1986), this Court noted that: a deduction has no basis in fact when the expense for which the deduction is claimed was never, in fact, made. A deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility. Ordinarily, a deduction having no basis in fact or in law can be described as frivolous, fraudulent, or, to use the word of the committee report, phony. [Fn. ref. omitted.]
Petitioner contends that the tax shelter deductions claimed on the Ianniellos' 1981 tax return were frivolous or phony, had no basis in fact or in law and, therefore, were necessarily grossly erroneous. This contention is based upon the report (RAR) of the revenue agent who examined the various tax shelters promoted by First World Investors and the terms of the Amended Stipulation of Settlement. *479 Respondent objects to the admission of the RAR based on relevancy. Respondent argues that the RAR is the revenue agent's position and does not necessarily represent the position of respondent taken in the statutory notice of deficiency. Further, respondent argues that petitioner's attempt to introduce the RAR goes behind the statutory notice of deficiency in violation of the principles set forth in Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974). Alternatively, respondent argues that even if the RAR is considered, it does not establish that the losses claimed in regard to Oswego were grossly erroneous, since the RAR noted that the "total disallowance is made since no documentation nor books and records were presented to substantiate the R & D [research and development] expenses deducted." Generally, this Court will not go behind the statutory notice of deficiency. Greenberg's Express, Inc. v. Commissioner, supra. This is not a case in which an exception to this rule would apply. See Jackson v. Commissioner, 73 T.C. 394, 401 (1979); Greenberg's Express, Inc. v. Commissioner, supra at 328; *480 Saavedra v. Commissioner, T.C. Memo 1988-587. Therefore, we conclude that the RAR is not admissible in evidence. In the statutory notice, the losses were disallowed on the basis that the Ianniellos failed to establish that they were entitled to any portion of the loss. Respondent conceded in the Amended Stipulation of Settlement that, if petitioner is not entitled to innocent spouse relief, she is entitled to certain ordinary deductions of $ 21,000 and $ 10,125 for the 1981 taxable year which represents 75 percent of the cash expended in acquiring Oswego and Gamma, respectively. The Amended Stipulation of Settlement also provides that petitioner is not entitled to any other losses, deductions, or credits resulting from her interests in Oswego and Gamma for the 1981 taxable year. There is no provision which notes whether or not the losses claimed had any basis in fact or law. Petitioner cannot rely on respondent's disallowance in the statutory notice or her inability to substantiate the losses to prove the lack of basis in fact or law. Douglas v. Commissioner, supra at 763. It is not possible to determine from the Amended Stipulation *481 of Settlement whether the losses had a basis in fact or law. Petitioner has not offered any evidence to establish that the losses claimed have no basis in fact or law. The fact that petitioner conceded that respondent's adjustments with respect to the losses are correct is not sufficient to establish that the claimed losses were in an amount for which there was no basis in fact or law. Purcell v. Commissioner, supra at 239. We conclude that petitioner has failed to satisfy this requirement with respect to the claimed losses.[4] Therefore, petitioner is not entitled to innocent spouse relief with respect to these claimed losses. Since we have concluded that there is a substantial understatement of tax attributable to the omitted gross income of $ 166,667, we must determine whether petitioner meets the last two requirements for relief *482 with respect to this item. The third requirement of section 6013(e) is that petitioner must establish that at the time of signing the 1981 tax return, she neither knew nor had reason to know that there was a substantial understatement of tax attributable to grossly erroneous items of Mr. Ianniello. Sec. 6013(e)(1)(C). The issue regarding petitioner's knowledge is essentially factual. In determining whether petitioner had reason to know of the understatement, we must consider whether at the time of signing the return, a reasonable person in petitioner's circumstances could be expected to know of the substantial understatement or that the reported tax liability was erroneous or that further investigation was warranted. Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979); Mysse v. Commissioner, 57 T.C. 680, 699 (1972). Petitioner argues that she had no knowledge of her husband's business affairs and that her limited education and work experience contributed to her inability to understand the tax return. Petitioner never discussed the tax return with her husband, their attorney, or accountant. Her husband told her to sign the 1981 tax return *483 and she did. She did not review the return and did not ask any questions about the return. Petitioner's education is limited, not extending beyond the sixth grade. She was employed outside the home for only a short period of time as a laboratory technician, a hat check girl, and a hostess in a restaurant. Since then she has been a housewife and mother. Petitioner invested in penny stocks and purchased a home. She relied on an investment firm to invest in the stocks. We conclude that petitioner had no actual knowledge of the substantial understatement of tax. See Estate of Brown v. Commissioner, T.C. Memo 1988-297. We must determine whether petitioner had reason to know that there was a substantial understatement of tax attributable to grossly erroneous items of her husband. Petitioner's husband effectively excluded her from knowledge of business affairs, family financial matters, and the contents of the tax return. See, e.g., Terzian v. Commissioner, supra at 1170-1171; Bell v. Commissioner, T.C. Memo 1989-107; Estate of Probinsky v. Commissioner, T.C. Memo 1988-371; Bouskos v. Commissioner, T.C. Memo 1987-574. *484 When she married Mr. Ianniello, petitioner did not know what he did for a living and he never discussed what he did for a living with her. Petitioner did not participate in any of her husband's business activities. In 1981 petitioner believed that her husband was in the garbage business. Prior to signing the 1981 tax return, petitioner had no knowledge of her husband's other business affairs or his business associates. Mr. Ianniello controlled the family finances and paid all the family bills. Petitioner was given an allowance for food and household expenses. Thus, a reasonable person with Mrs. Ianniello's lack of business sophistication and lack of access to the family's financial activities could not reasonably have known of the understatements. Petitioner did not receive lavish gifts and did not make expenditures subsequent to their receipt of the omitted income that should have put a reasonable person in Mrs. Ianniello's position on notice that understatements in tax had been made. Terzian v. Commissioner, supra; Mysse v. Commissioner, supra.
Respondent argues that the history of her husband's activities should have put *485 petitioner on notice that she should inquire as to the accuracy of their tax return. We are concerned with what petitioner knew or had reason to know in 1982 when she signed the 1981 tax return. Petitioner was not aware of her husband's legal problems or the events underlying these problems until 1985 or later. Without such knowledge, petitioner could not be put on notice that she should inquire as to the accuracy of their 1981 tax return. Anderson v. Commissioner, T.C. Memo 1975-104. Respondent further argues that the fact that she did not call her husband to testify is also indicative of the possibility that such testimony would not be favorable for petitioner, citing Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We are convinced that petitioner is a credible witness and, as such, has provided sufficient evidence to establish that she did not know and had no reason to know that there was a substantial understatement of tax on the 1981 tax return. The only other testimony offered was that of Jerome Brickman, an accountant. Mr. Brickman testified as to petitioner's *486 level of sophistication of tax matters. He testified that he showed petitioner the 1987 and 1988 tax returns and discussed them with her. His testimony was inconsistent and relates to petitioner's knowledge in 1987 and 1988 and, as such, is not helpful or relevant to our determination. We conclude that, at the time of signing the 1981 return, petitioner did not have reason to know that there was a substantial understatement of tax on the 1981 taxable return. The final requirement for innocent spouse relief is that, taking into account all of the facts and circumstances, it would be inequitable to hold the spouse seeking such relief liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1)(D). Personal benefit from a substantial understatement is a factor to be considered in making an equity determination. Purcell v. Commissioner, 86 T.C. at 242. Normal support is not a significant benefit for purposes of determining whether it is inequitable to hold a spouse liable for a deficiency. Terzian v. Commissioner, 72 T.C. at 1172. Unusual transfers of property, even years after the receipt of the omitted income, *487 may constitute a significant benefit to the spouse receiving the property. Terzian v. Commissioner, supra at 1172. Respondent argues that it would not be inequitable to hold petitioner liable for the deficiency because petitioner is still married to Mr. Ianniello and received over $ 20,000 in 1981 for household and personal use which could be considered above normal support. Further, respondent points out that petitioner has acquired two real estate properties from her husband, one with a value of $ 395,000. Petitioner argues that it would be inequitable to hold her liable for the deficiency because her husband was compelled to forfeit the money he skimmed. The Ianniellos owned a house, a condominium, and a farm. These properties were transferred into petitioner's and her children's names. These properties were purchased in earlier years prior to the receipt of the omitted income. One of the purchases was made with petitioner's money. Petitioner did not benefit from the receipt of the omitted income as a result of these transfers. Zinser v. Commissioner, T.C. Memo 1978-256. The Ianniellos enjoyed a comfortable standard of living *488 throughout their marriage. Petitioner received a weekly allowance of $ 400. This allowance was not above normal support considering the family's income in 1981 and the number of children to support. We conclude that it would be inequitable to hold petitioner liable for the deficiency with respect to the omitted income. Accordingly, we hold that petitioner is not entitled to innocent spouse relief under section 6013(e) with respect to the losses, but is entitled to innocent spouse relief with respect to the omitted income. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. At the trial, petitioner's counsel argued that petitioner never signed the 1981 tax return, but in fact, a secretary signed the return. He offered this evidence not to contest the signature, but rather as evidence that petitioner never saw or reviewed the return. Respondent objected on the basis that petitioner stipulated that she signed the return. This Court stated that since petitioner stipulated that she signed the return, whether or not she signed the return is not an issue in this case.↩
3. The Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801-802, amended sec. 6013(e)↩ retroactively to all years to which the Internal Revenue Code of 1954 applies.
4. Since we have concluded that petitioner has failed to prove that the claimed losses are unfounded, we need not address the requirements of sec. 6013(e)(4)↩.