OPINION OF THE COURT
William C. Brennan, J.
Defendant, herein, has been indicted and charged with assault in the second degree and menacing.
The People allege that on August 7, 1982 at approximately 6:45 p.m. at the American Airlines terminal (building No. 57) at JFK International Airport, Queens County, the defendant struck the complainant in the face causing injury to his eyes. At the time of the incident, the defendant, a native of the island of Jamaica, was on duty as a security guard, directing cars that approached the terminal to pick up arriving passengers. The complainant was a driver for a limousine service. A dispute arose over whether the complainant could park his limousine in front of the terminal, or whether he was required to park in a designated area for limousines away from the terminal entrance. The complainant exited his vehicle whereupon, he claimed, the defendant struck him and threatened him *1014 with a knife (not recovered). Thereafter, complainant entered the terminal and spoke with the defendant’s superiors. The Port Authority police were called to the scene and, at the complainant’s behest, arrested the defendant and charged him with assault in the second degree, criminal possession of a weapon in the fourth degree and menacing. As a result of the defendant asserting his innocence and insisting that the complainant struck him first, the police also arrested the complainant but only charged him with a violation for harassment. Both received desk appearance tickets.
On February 15, 1983 and February 16, 1983, the District Attorney presented the matter to the Grand Jury.
The defendant, having executed a waiver of immunity, was the first witness to appear and testify before the Grand Jury.
The defendant now seeks dismissal of the instant indictment pursuant to CPL 210.20 (subd 1, par [c]) (defective Grand Jury proceedings); 210.35 (subd 4) (defendant not accorded an opportunity to appear and testify before the Grand Jury in accordance with the provisions of CPL 190..50); and 210.40 (in furtherance of justice). The underlying premise for defendant’s motion is the assertion that the District Attorney went beyond the limits of proper cross-examination; making prejudicial remarks and asking questions aimed at discrediting the defendant’s testimony based upon his race and place of birth.
The People refute the defendant’s arguments on the grounds that the relief sought cannot be obtained since defendant was accorded an opportunity to appear and testify before the Grand Jury and exercised his right and further that there are no compelling factors warranting dismissal in the furtherance of Justice. The People, however, consent to treating this motion as a motion to inspect and dismiss pursuant to CPL 210.30 (insufficiency of evidence).
The court is now confronted with the heretofore unresolved issue as to whether CPL 210.20 (subd 1, par [c]) and 210.35 (subd 4) can be invoked where a defendant has, in fact, appeared and testified (upon execution of a waiver of immunity), before the Grand Jury.
*1015 In reaching a determination the court must, in the case at bar, consider the impact of the prosecutor’s actions before the Grand Jury to ascertain whether they were of such a prejudicial nature as to have effectively negated the defendant’s right to appear and testify before said Grand Jury.
I
CPL 190.50 (subd 5, par [a]) states in pertinent part: “When a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf”.
Paragraph (b) of subdivision 5 provides that “such person must be permitted to testify before the grand jury and to give any relevant and competent evidence concerning the case under consideration. Upon giving such evidence, he is subject to examination by the people.”
Since 1979 only two cases have been reported in the “Notes of Decisions” following the Supplementary Practice Commentaries to CPL 190.50 (see McKinney’s Cons Laws of NY, Book 11 A, CPL 190.50, 1972-1981 Supp Pamph, p 121) in which indictments were dismissed where it. was found that defendants were denied their statutory right to testify even though they appeared before the Grand Jury.
In People v Dunbar (100 Misc 2d 389, 390-391) the court dismissed the indictment on the grounds that “the prosecutor embarked upon a lengthy examination of the witness and did not offer the witness the opportunity to present evidence in his own behalf until he, the prosecutor, completed his examination. The prosecutor objected to the witness’ statement on the basis of relevancy before he was able to get into his version of the events.”
The court held that the People had a statutory right to cross-examine the defendant witness (see CPL 190.50, subd 5, par [b]) but only after said witness completed his statement to the jurors.
Similarly, in People v Green (80 AD2d 650) the indictment was dismissed and the Grand Jury proceedings found defective where the Assistant District Attorney interrupted the witness twice after she began her statement and *1016 thereafter proceeded to question and cross-examine her. The witness was then excused and not given permission to conclude her testimony. The Appellate Division, Third Department, reversed the lower court’s denial of the motion to dismiss on the ground that the Grand Jury proceedings were defective under GPL 190.50 (subd 5), 210.20 (subd 1, par [c]) and 210.35 (subd 4).
What makes this matter unique and distinguishable from Dunbar and Green (supra), is that here the defendant was given the opportunity to complete his entire, although brief, statement before the prosecutor commenced his cross-examination. However, upon inspection of the Grand Jury minutes, it became evident to the court that the Assistant District Attorney was predisposed to proving the defendant’s guilt before the Grand Jury rather than just eliciting facts for the jurors’ consideration. Under such circumstances the court cannot, in good conscience, allow this indictment to stand.
Although the District Attorney has sole authority in determining who is or is not to be prosecuted (People v Siragusa, 81 Misc 2d 368), it is well settled that the primary duty of a District Attorney is to see that justice is done. (People v Lofton, 81 Misc 2d 572.) “The District Attorney is a public officer. His duties are quasi-judicial in nature. His obligation is to protect, not only the public interest, but also the rights of the accused. In the performance of his duties, he must not only be disinterested and impartial, but must also appear to be so”. (People v Lofton, supra, p 575.)
It behooves this court to extract portions of the more than 100 pages of Grand Jury minutes which clearly demonstrate that the District Attorney was not, by any stretch of the imagination, acting in a proper and impartial manner.
Q. Is there a lot of pressure on your job?
A. Not so much.
Q. But you just described to us sir, that if you don’t do your part, a properly demanding job, and if you don’t inquire of drivers, and if one car blocks everything; I think it would be true to say that you would not take it with so much equanimity?
*1017 A. I don’t understand.
Q. I’ll ask it again. During the rush hour, are you very busy?
A. Yes.
Q. And there are times when people are not as nice as they would be if it were not rush hour?
A. But they don’t come after us sir.
Q. August 7th, going back to last year, was a hot day; do you remember?
A. August is the summer.
Q. And it being the summer, how would you describe it? Would you say it’s hotter than other months?
A. No. I can take the hot sir, heat don’t bother me.
Q. Were you forced to take the heat that day sir?
A. The heat don’t bother me sir.
Q. The heat never bothers you?
Q. It doesn’t bother me. I was born in tropical climate. The heat won’t bother me * * *
Q. What are you assigned to do in that area? •
A. My job is coming in flights. I ask — I’d greet you real politely. I’d ask you what flight you’re meeting. We have a main monitor inside. We take down the time of the flight. We — every fifteen minutes one of us would go inside and if a flight is delayed —
Q. Not to interrupt you, but as far as the politeness, are you as polite to limo drivers as you would be —
A. I’m polite to everybody sir.
Q. You are extremely polite as well as to limo drivers who get hysterical?
A. Yes * * *
Q. Please, sometimes I don’t listen quite as well as I should. Let’s take it step by step * * *
Q. Whatever, we’re trying not to confuse you. I’m the one that sometimes gets overly confused * * *
Q. Mr. Davis, we are not here to be overly tough on anyone who has volunteered to come in. Mr. Davis, isn’t it true that you picked up something in your hands and you were the one that hit this individual?
A. No, sir.
Q. Would you be surprised if someone were to say that the individual was taken to the hospital?
*1018 A. Excuse me sir?
Q. Would you be surprised if someone told you that this individual was taken to the hospital?
A. I have heard of that sir.
Q. Mr. Davis, isn’t it true that you did strike the individual?
A. I never struck first. All I did was-throw my hands up in the air.
Q. Sir, you never struck first?
A. No, sir.
Q. But you did however make a statement, I never struck first. Does that leave a little bit of doubt because if you didn’t strike first, did you strike second?
A. As I explained to you before sir, when he struck me I was so astonished, I threw my hands up in the air to get him off of me. This guy’s bigger than me * * *
Q. Isn’t it a fact that you came after this individual with a knife?
A. A knife? I don’t even walk with a knife.
Q. Just answer the question sir. I will ask it to you again. Isn’t it a fact that you came at the individual with a knife sir?
A. I don’t walk with a knife sir.
Q. I don’t care whether you walk, write, sit or run with a knife. The question and I will ask it to you a third time is, isn’t it a fact that you came after this person, that you displayed and came after this person with a knife; yes or no?
A. No, sir.
Q. This goes back to August seventh, rightly or wrongly, you were taken into custody?
A. Yes. They take me over there. They searched me.
Q. Well sir, were you arrested on the seventh of August, rightly or wrongly, not going into whether it was valid judgment whether it was a correct action?
A. Yes.
Q. So, it was the seventh of last year of standing accused of something rightly or wrongly; it that right sir * * *
Q. What type of environment did you grow up in sir?
A. I grew up with my greatgrandmother sir.
Q. Where was that?
A. Kingston, Jamaica.
Q. Have you seen a lot of violence in your life?
*1019 A. What sir? What did you say?
Q. You grew up in Jamaica; right sir?
A. Yes.
Q. That’s an environment different from what we have here in New York
* * *
Q. Mr. Davis, isn’t it a fact sir, that you did strike the person you have described as the limo driver, an improper act; and you probably regret the fact that you did hit him when you did?
A. Sir, as I explained to you, I do not hit no one. I do not go in fights. I grew up to respect people, loving people. I do not —
Q. That’s all well and good. You have never slipped? Have you ever struck anyone in your life?
A. That I don’t fight — a lot of people don’t fight.
Q. Have you ever struck anyone in your life?
A. No. I got children home. I never even slapped them. All I do is talk to them.
Q. You’ve never been provoked to anger?
A. I walk away. If you speak to me and people that I know, they tell you I walk away.
Q. One more time, did you strike him?
A. I never strike him. He struck me. All I do is throw my hands up in the air to get him off me.
Q. That’s all you did?
A. That’s all I did.
The Grand Jury is an “arm of the court” and, therefore, courts have the responsibility to prevent unfairness in its proceedings. (People v Ianniello, 21 NY2d 418.) As stated in Ianniello {supra, p 424): “[A] Grand Jury proceeding is properly an investigation rather than a prosecution directed against the witness”.
An individual’s due process rights remain the same, whether he is a prospective defendant before the Grand Jury or a defendant at trial after indictment.
GPL 190.30 (subd 1) states: “Except as otherwise provided in this section, the provisions of article sixty, governing rules of evidence and related matters with respect to criminal proceedings in general, are, where appropriate, *1020 applicable to grand jury proceedings.” (See CPL art 60; People v Davis, NYLJ, Jan. 28, 1983, p 16, col 1.)
There is, however, a vital distinction between the application of the rules of evidence with respect to the Grand Jury as opposed to a trial before the court or petit jury; at trial defense counsel can raise objections to questions that may be prejudicial and/or improper; in the Grand Jury he is required to maintain his silence.
CPL 190.52 (subd 2) provides that the attorney for a witness who has signed a waiver of immunity “may be present with the witness in the grand jury room. The attorney may advise the witness, but may not otherwise take any part in the proceeding.” As such the witness is placed in the unenviable position of being at the prosecutor’s mercy. Therefore, it is incumbent upon the District Attorney to maintain an even-balanced approach to soliciting the relevant facts.
In the instant proceeding it served no valid purpose, other than to taint the minds of the jurors, to question the defendant about his place of birth and to infer that he was prone to violence as a result of an environment different from that in New York. Nor was it proper to inquire as to whether he had ever struck anyone in his life and to repeat these inquiries numerous times upon the defendant’s denial of same.
Under these circumstances, such questions are improper, prejudicial and have about as much relevancy as the often-quoted example in law school evidence courses: “When did you stop beating your wife?” (See Richardson, Evidence [10th ed], §§ 480-481.)
A prospective defendant should not be abused as a witness before the Grand Jury. In view of the testimony, herein, creating an issue of fact as to which party struck whom first, it was the District Attorney’s responsibility to be overly cautious in his presentment as there existed a real possibility that either of two witnesses (complainant or defendant) could have been indicted.
When viewed in its entirety, the blatant attitude of the prosecutor in “trying” this case before the Grand Jury warrants this court td grant defendant’s motion to dismiss *1021 under CPL 210.20 (subd 1, par [c]) and 210.35 (subd 4). It cannot be said that the defendant was accorded his right to appear and testify under any interpretation of the statute within the guidelines of fairness and due process. (See CPL 190.50.)
II
At this juncture the court deems it necessary to comment upon the sequence of witnesses that appeared before the Grand Jury with regard to this indictment.
As previously noted, the defendant was the first witness to testify and be cross-examined by the District Attorney.
In People u Futia (113 Mise 2d 651), the court dismissed the indictment where the People contended that they had no burden of going forward in the Grand Jury and sought to have the defendant testify first, refusing to respond to defendant’s inquiry as to whether any of the People’s witnesses had testified. There, the court held (p 653):
“The People say there is no burden of going forward; the court disagrees. The People insist that procedural rules must be followed by the defendant; the court agrees. The procedural rules are that the People have to put in a prima facie case in a trial and also have to do the same thing in the Grand Jury.
“CPL 190.55 (subd 2, par [a]) states:
“‘2. District attorneys are required or authorized to submit evidence to grand juries under the following circumstances:
“ ‘(a) A district attorney must submit to a grand jury evidence concerning a felony allegedly committed by a defendant.’
“The language in CPL 190.55 (subd 2, par [a]) is readily understandable, plain, clear and concise.
“It has been said that if the District Attorney does not submit evidence before the Grand Jury to create a prima facie case against the accused, there is no need for the defendant to testify at all. (See Black’s Law Dictionary in defining prima facie case.)
“The People do have ‘wide discretion’ in making its presentment to the Grand Jury (citing People v Perez, 105 *1022 Misc 2d 845) but its ‘wide discretion’ is in presenting any of its witnesses. This does not include the defendant in its ‘wide discretion.’”
This decision was upheld by the Court of Appeals in Matter of Morgenthau v Altman (58 NY2d 1057).
In the case at bar, almost half of the lengthy testimony adduced before the Grand Jury was that of defendant. Coupled with the egregious errors by the prosecutor as outlined in section I of this opinion, the District Attorney’s failure to go forward and present a prima facie case before the Grand Jury, indeed warrants dismissal of the indictment. Assuming, arguendo, that the cross-examination of the defendant by the People had passed muster, the instant proceeding would in any event, have been found defective in light of Morgenthau v Altman (supra).
Ill
Sections I and II of this opinion notwithstanding, dismissal of the indictment, upon a motion to inspect, consented to by the People, is granted.
The testimony of the defendant as well as other witnesses contained numerous assertions that the defendant either did not strike the complainant or did so only as a reflex response in self-defense. A clear issue of fact was thus placed in the juror’s hands without the proper guidance as to how to use such information during their deliberations. The Grand Jury minutes are devoid of any instructions with respect to justification thereby rendering said proceedings defective.
In People v Tapalansky (NYLJ, June 9,1976, p 13, col 4), the court was confronted with a similar situation and granted defendant’s motion to dismiss on the grounds that the Assistant District Attorney’s instructions to the Grand Jury were improper and legally insufficient. “A reading of the grand jury minutes indicates that the defendant testified before the grand jury and raised the defense of justification. Fairness would dictate that where a defendant raises such a defense befor[e] the grand jury, it is the duty of the Assistant District Attorney to instruct the jury as to the applicable sections of the law. The Assistant District Attorney’s failure to instruct the grand jury on the issue of *1023 justification, in effect, removes the defendant’s testimony from the jury from the jury’s consideration. Even if the defendant’s testimony is believed, the jury would not know in what manner it should consider such testimony — what action it might take upon crediting same. When the prosecutor inhibits a grand jury from comprehending all of its alternatives, he then improperly usurps its function and this cannot be tolerated.” (Emphasis supplied; see Penal Law, art 35; People v Ortiz, NYLJ, Feb. 7, 1980, p 7, col 3; People v Vasquez, NYLJ, March 7, 1983, p 13, col 1.)
Accordingly, for the reasons set forth above, the defendant’s motion to dismiss the indictment is granted with leave to resubmit to another Grand Jury.
Bail conditions to remain the same.