■ The People of the State of New York, Respondent, v Thomas M. McRoy, Appellant.—Appeal by the defendant from a judgment of the County Court, Suffolk County (Vaughn, J.), rendered November 14, 1984, convicting him of murder in the second degree (two counts), and attempted sodomy in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of the defendant's motion to suppress certain evidence.

Judgment affirmed.

On the evening of December 29, 1983, the then 17-year-old defendant drove with the deceased, 15-year-old James Richards, to a secluded area in Lloyd Harbor. There, the deceased's refusal to engage in an act of sodomy escalated into an argument which culminated in his death by strangulation. The defendant concealed the body in the woods, informing no one of the death. A missing-person investigation was commenced after the victim failed to return home.

On January 17, 1984, in the course of the investigation, a detective from the Suffolk County Homicide Squad stopped the defendant in his car by having him pull over to the side of the road. The defendant's only known connection to Richards' disappearance at this point was the information, acquired from the victim's brother, that the defendant had spoken to the missing boy on the telephone and had made arrangements to meet him on the day of his disappearance. The defendant initially denied that he had made any such telephone call. According to the police, the defendant agreed to accompany the detective to a nearby police car where other police were waiting with another youth named Douglas Arneman, who was an acquaintance and co-worker of the defendant. The defendant was placed in a car with Arneman, who was wearing a hidden tape recorder. In spite of Arneman's attempt to obtain information about the telephone call, the defendant continued to deny the call and any involvement with the missing boy.

Homicide Detective Anthony Palumbo then asked the defendant if he would accompany him to police headquarters in Yaphank and submit to questioning and a polygraph test concerning the alleged telephone call and anything else he might know concerning Richards' disappearance. During the ride to Yaphank, Detective Palumbo read the defendant his *Miranda* rights, explained to him how a polygraph works in detecting untruthful responses, and told him the police would determine from the telephone company's computer record whether the defendant had made the alleged call to the Richards' household. Shortly before reaching police headquarters, the defendant asked Palumbo to pull over to the side and he confessed in detail to killing James Richards. The defendant later signed a written confession.

On appeal, the defendant claims that he did not voluntarily accompany the police to Yaphank. He argues that the confession and all evidence derived therefrom should have been suppressed since it was obtained while he was unlawfully in custody (see, Dunaway v New York, 442 US 200). The People

do not dispute that prior to the confession they lacked probable cause to arrest or to hold the defendant in custody. Indeed, the police did not consider the defendant a formal suspect prior to the confession, and did not even know that the missing boy was dead.

We find the evidence in the record sufficient to sustain the hearing court's findings that the defendant voluntarily accompanied the police and was not in custody when he made his initial confession (see, People v Yukl, 25 NY2d 585, cert denied 400 US 851; People v Quartararo, 113 AD2d 845; see, Brown v Illinois, 422 US 590; Matter of Kwok T., 43 NY2d 213, 219-220). In addition, the evidence clearly supports the hearing court's further finding that neither the defendant nor his father ever asserted the defendant's right to counsel, or requested the assistance of counsel.

Although the defendant's trial was not completely error free, those errors which were committed must be deemed harmless in view of the overwhelming evidence of guilt. The fact that a trial was not without blemishes and failings does not necessarily imply that it has been unfair (see, People v Garcia, 72 AD2d 356, 360, affd 52 NY2d 716 for reasons stated at App Div). The admission into evidence at trial of testimony by one of the People's witnesses, Detective Palumbo, to the effect that, subsequent to obtaining the defendant's full and detailed confessions, he overheard the defendant again admit the murder during a telephone conversation with his parents from the police station, was error. The conduct of the police in urging the defendant to inform his parents of the details surrounding his involvement after the defendant stated that he did not wish to do so was improper, and, therefore, testimony as to that conversation should have been excluded.

Under the circumstances, however, there is no realistic possibility that the jury was swayed by the admission of this testimony and afforded greater weight to the defendant's other confessions than they might otherwise have done. Accordingly, the admission of the subject testimony, which was purely duplicative of the defendant's prior, much more detailed confessions, must be deemed harmless.

Following the suppression hearing, Detective Palumbo visited the home of Douglas Arneman for the purpose of "discuss[ing] why he had lied" when he testified at the pretrial hearing and why he had used certain words to describe the manner in which the police stopped the defendant. While his conduct was technically improper inasmuch as it carried with it the danger of infringing upon the defendant's constitutional

right to present his own witnesses *(see,* US Const 6th Amend; *Washington v Texas,* 388 US 14, 19; *United States v Thomas,* 488 F2d 334), it ultimately proved harmless in view of the fact that the record clearly reveals that it did not in any way affect Arneman's testimony at trial. The defendant has greatly overstated the significance of this particular impropriety.

Admission of extensive testimony of several rebuttal witnesses concerning largely collateral matters such as the defendant's credibility *(see, People v Harris,* 57 NY2d 335, 345, *cert denied* 460 US 1047; *People v Schwartzman,* 24 NY2d 241, 245; Richardson, Evidence §§ 491, 517 [Prince 10th ed]), as well as one inadvertent reference in the court's charge to an item of excluded evidence, were errors, but collectively harmless ones in light of the overwhelming proof of the defendant's guilt.

We have considered the defendant's remaining contentions and have found them to be without merit. Weinstein, J. P., Lawrence, Kunzeman and Kooper, JJ., concur.