*622 OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant herein moves to dismiss the indictment on the ground that the Grand Jury proceeding was defective in that it failed to conform to the requirements of CPL article 190 to the extent that the integrity of the proceeding was impaired and the defendant prejudiced. (CPL 210.20 [1] [c]; 210.35 [5].) Specifically, the defendant argues that the Assistant District Attorney interfered with his right to the advice of counsel while testifying before the Grand Jury under a waiver of immunity. (CPL 190.52.)
The defendant has been indicted for the crime of possessing a controlled substance with intent to sell. A police officer testified that he observed the defendant receive money from an unidentified woman and then drop a vial of crack cocaine, which the woman picked up from the ground. The officer further testified that he arrested the defendant within five minutes, finding $4 and three vials of crack in his possession.
THE DEFENDANT’S TESTIMONY
The defendant, accompanied by counsel (CPL 190.52), testified before the Grand Jury under a waiver of immunity (CPL 190.50 [5] [b]). The defendant denied that he had sold cocaine, but testified that he possessed three vials of crack for his own use. The defendant testified that he received the vials from "three guys” whom the defendant knew. When asked to name the three men, the defendant inquired whether he could speak to his lawyer. He was permitted to do so. (1) He then replied that "these people ain’t really involved [in] what I am here [for] now.” When the question was repeated, the defendant answered without further consulting his attorney. Presumably in an attempt to establish that the defendant possessed intent to sell cocaine, the Assistant District Attorney asked the defendant how he obtained money. The defendant testified that he received welfare, had saved some $300 while in a program of work release from State prison where he had been until three months beforehand, and also received money from his family. At one point in the defendant’s testimony, the Assistant District Attorney inquired whether the money the defendant spent to go to movies was "welfare money”. The Assistant District Attorney reviewed the defendant’s prior record of four felony and seven misdemeanor convictions in detail; including four robberies, one invalid use of a credit card, a fare beat, a trespass, and criminal possession of con *623 trolled substances. The Assistant District Attorney repeatedly emphasized the robbery convictions. The Assistant District Attorney then asked the defendant to "tell the grand jury what happened” on the occasion of his arrest for criminal possession of marihuana. The defendant explained that he was arrested when he took a bag of marihuana out of his pocket to give to a friend whom he owed money. The Assistant District Attorney finally asked the defendant to tell the Grand Jury what he had been arrested for on the occasion in 1990 when the defendant pleaded guilty to criminal possession of a controlled substance. The defendant replied that he did not remember. The Assistant District Attorney then asked whether the defendant had been arrested for criminal sale of a narcotic drug. The defendant repeated that he did not remember. (2) The Assistant District Attorney then remarked: "Just let the record reflect that the defendant has stated T don’t remember’ as, at the instruction of his, his defense attorney.” The Assistant District Attorney then pointed out that of the four felonies and seven misdemeanors for which the defendant had been convicted, several were for "drug related activities.” The defendant generally replied in response to these questions, that he pleaded guilty to those crimes because he committed them. The defendant volunteered that he did not stay in one place long because "[t]hey lock you up for anything.” This prompted the Assistant District Attorney to ask whether defendant had "ever been locked up for a crime that [he] did not commit.” (3) The defendant’s answer was somewhat incoherent. He stated: "I have been locked up for crimes, but for this one, I have never been locked up.” The Assistant District Attorney began another question, which he interrupted with an admonition to the defense attorney to "please not talk to your client while I am asking him a question.” The Assistant District Attorney continued to question the defendant about his guilt on all other occasions when he was arrested, save the occasion at issue. Then the following ensued:
"Q. Sir, you live in the Bronx; is that correct, sir?
"A. Yes, sir, I live in the Bronx.
"Q. And after you leave Forty-second street, you were going to go uptown to Harlem; is that correct?
"A. I was going to go to Harlem.
"Q. Which is also where, which is where John, Prince Champ — I don’t know, and Cool-Aid [the men from whom the defendant testified he had obtained the crack] live?
*624 "A. No, I was going where they was at.
"Q. Where were you going, sir?
"A. I was going to the park.
"Q. What park, sir?
"A. Moores Park.
"Q. And why were you going to that park, sir?
"A. To go there and sit down, watch the kids run around and enjoy myself there. That is where I go for peace and quiet.
"Q. Did you ever buy crack there?
"A. No, sir.
"Q. Where do you buy crack?
"A. I don’t even know if they sell crack there now.
"Q. Where do you buy crack?
"A. Where do I buy my cracks at?
"Q. Yes.
"A. Forty-second street.”
(4) Assistant District Attorney: "Please let the record reflect that the defense attorney is instructing her client as to what answer he should provide. And Miss [defense counsel], now, I instruct you now that you are not to provide your client with answers and you are not testifying, Miss [defense counsel]. Your client is testifying.
"Miss [defense counsel], do you understand that? Would you please indicate on the record, Miss [defense counsel], whether or not you understand my instruction?
"A. I wanted to speak to her, sir.
"Q. Do you wish to further consult with your attorney?
"A. At this moment, no sir.”
The questioning about the places and persons from whom the defendant obtained crack continued. Then the following occurred:
"Q. Sir, when you purchase crack cocaine, isn’t it a fact that it often happens that you will give them money and that they in turn will drop that cocaine to the ground, and that you will pick it up?
"A. No, sir. As a matter of fact, I don’t know. I don’t remember no crack falling on the floor. I don’t remember nothing fall on the floor because when I buy something, they gave it to me right in my hand. And that is uptown and downtown.
*625 (5) "Q. Is that your answer, sir? Or is that the defense attorney’s answer.
"A. That is my answer, sir.”
After the defendant testified, the Assistant District Attorney recalled the officer who had initially testified. The Assistant District Attorney paraphrased the defendant’s testimony and asked the officer: "is that accurate testimony?”. The officer replied that the defendant’s testimony was not accurate.
THE LAW
CPL 190.52 provides, in pertinent part, that
"1. Any person who appears as a witness and has signed a waiver of immunity in a grand jury proceeding, has a right to an attorney as provided in this section * * *
"2. The attorney for such witness may be present with the witness in the grand jury room. The attorney may advise the witness, but may not otherwise take any part in the proceeding.”
The statute represents a balance between concern for fairness to the potential defendant before the Grand Jury and concern that the presence of counsel for the defendant would interfere improperly with the Grand Jury’s proceedings. This balance was achieved by limiting the role of counsel to being present with the witness to advise the witness, but otherwise to not participate in the proceedings. Such advice as counsel gives the witness before the Grand Jury may not interfere improperly with the proceedings of the Grand Jury. (See, Matter of People v Riley, 98 Misc 2d 454, 456-457 [Sup Ct, Queens County 1979].)
The role of counsel under the statute has been defined as "to give an opinion, counsel or make recommendations.” (Supra, at 458.) As noted by another court, in this context "[e]ffective legal counsel implicitly guarantees a witness the full benefit of a lawyer’s advice.” (Matter of Lief v Hynes, 98 Misc 2d 817, 825 [Sup Ct, Queens County 1979].) The Court of Appeals, in a decision rendered prior to enactment of the statute but no less pertinent to these proceedings, noted that given the investigatory as opposed to accusatory purpose of a Grand Jury presentation, a witness has no right to be represented by counsel as an advocate before the Grand Jury. Counsel has a more limited role in this context, as advisor of the witness in regard to decisions the witness is called upon to make concerning the witness’ legal rights in the Grand Jury. *626 (People v Ianniello, 21 NY2d 418, 424.) The Court identified three legal rights of a witness which may be critically affected before the Grand Jury, and as to which the witness should be entitled to consult with counsel: the decision whether to assert the privilege against self-incrimination; the decision whether to answer a question that has no apparent bearing on the subject of the investigation; and the decision whether to invoke a testimonial privilege, such as the attorney-client privilege. These are legal matters that are likely to be raised by the questions the client will be called upon to answer during the Grand Jury proceeding. There are other matters about which a witness before the Grand Jury may properly consult with the counsel prior to the client’s testifying, such as the meaning of perjury or contempt, and the scope of an anticipated waiver or grant of immunity. And there are matters which counsel may resolve at the outset of the client’s appearance before the Grand Jury, by instructing the client to inquire of the Grand Jury whether, for example, there exist any eavesdropping warrants from which the questions are derived. (People v Einhorn, 35 NY2d 948.) Without adopting an immutable rule, the first category of decisions generally will be the subject of counsel’s advice to a witness before the Grand Jury. (See, e.g., Matter of Lief v Hynes, supra, 98 Misc 2d, at 825 [counsel’s primary role under the statute is to protect the defendant who waives immunity from the danger of self-incrimination]; People v Scott, 124 Misc 2d 357 [Suffolk County Ct 1984] [counsel should advise the witness as to the scope of the intended waiver of immunity]; People v Coppola, 123 Misc 2d 31, 35-36 [Sup Ct, Queens County 1984]; Maness v Meyers, 419 US 449, 466.)
It is obvious that counsel is not present in the Grand Jury to give the witness strategic advice as to how to answer the prosecutor’s questions. (People v Ianniello, supra, at 426.) "A witness has no right or duty to speak falsely before a Grand Jury and this knowledge is easily within the scope of the average layman. He does not need the advice of counsel by his side to know when to tell the truth.” (Matter of Lief v Hynes, supra, 98 Misc 2d, at 826.)
The role of counsel before the Grand Jury in protecting against prejudicial conduct by the prosecutor, is necessarily limited by the statute which inhibits counsel from taking any role in the proceeding beyond giving advice to the client. "Unlike a trial, where defense counsel can raise objections, the defendant before the Grand Jury is not in a position to *627 object, and, under these circumstances, nor is his attorney. (See, CPL 190.52 [2] * * * People v Davis, 119 Misc 2d 1013 [Sup Ct, Queens County 1983].) Thus, it is the prosecutor who must initially determine the propriety of a particular line of questioning.” (People v Rosa, 145 Misc 2d 423, 425 [Sup Ct, NY County 1989]; see, People v Davis, supra, 119 Misc 2d, at 1020.) Nor is it appropriate for counsel to advise the witness in such manner that the advice may be heard by the grand jurors and have a direct effect upon their deliberations. (Matter of People v Riley, supra, 98 Misc 2d, at 456-457.)
When the prosecutor does engage in abuse of the defendant before the Grand Jury, or otherwise oversteps the bounds of propriety by asking questions improper in form or in their connotation to the Grand Jury, or calling for irrelevant, privileged or otherwise improperly prejudicial answers, counsel must seek the assistance of the court supervising the Grand Jury proceeding. (People v Davis, supra, at 1020; see, People v lanniello, supra, at 425.) Counsel for the witness, through the medium of the witness, may force the prosecutor to take the matter into open court for a ruling, either by advising the witness to refuse to answer further questions until a ruling is obtained as to the propriety of the questions (People v lanniello, supra, at 425), or by advising the witness to request of the foreperson that the witness be allowed to seek a court decision on the propriety of the proceedings. (See, People v Doe, 95 Misc 2d 175, 177 [Sup Ct, Albany County 1978] ["(The) Grand Jury has the duty to protect a witness from an overzealous prosecutor to prevent a manipulated perjury entrapment. At any time that the witness feels he is subject to such manipulation he may complain to the foreman, and his attorney, and seek a court decision on the alleged infringement”].) It may be that the mere request will make the prosecutor aware of the impropriety, and that the prosecutor will then desist. Where the controversy is limited to a particular area, the prosecutor, or the foreperson at the prosecutor’s request, may defer seeking a judicial ruling and proceed to a noncontroversial line of questioning, in the interests of efficiency.
Even though the witness has counsel present in the Grand Jury room, the presence of counsel for the witness does not relieve the prosecutor of the duty of fairness to the witness. Because the statute explicitly limits counsel’s role within the Grand Jury to advising the witness, "the witness is placed in the unenviable position of being at the prosecutor’s mercy.” *628 (People v Davis, supra, 119 Misc 2d, at 1020.) A prospective defendant should not be abused as a witness before the Grand Jury. (Supra.)
The prosecutor is not merely an advocate before the Grand Jury, but has an obligation to ensure that the proceedings are conducted fairly. (See, e.g., People v Pelchat, 62 NY2d 97, 105; CPL 190.25 [6].) The prosecutor must not improperly influence the Grand Jury’s consideration of the evidence by engaging in colloquy with a witness’ counsel before the Grand Jury. (See, e.g., People v De Jesus, 42 NY2d 519, 523-524.) Nor should the prosecutor run the risk of improperly influencing the Grand Jury’s evaluation of the witness’ testimony by suggesting before the Grand Jury that counsel is coaching the witness to testify untruthfully. (See, e.g., People v Jones, 181 AD2d 463, 464 [1st Dept 1992]; People v Rivera, 116 AD2d 371, 374 [1st Dept 1986].)
THE GRAND JURY PROCEEDINGS
The court does not find, on this record, apart from the Assistant District Attorney’s characterization of communications between counsel and client within the Grand Jury as "providing answers”, that the defendant sought improper assistance from his attorney. On each occasion when the Assistant District Attorney noted the consultation on the record, it appears to have been proper. However, defendant’s counsel failed to seek the assistance of the court where appropriate, and failed to advise the defendant to decline to answer those questions that may have been immaterial to the investigation, or have called for privileged answers.
On the first occasion when the defendant sought his counsel’s advice, he was asked to name the men from whom he obtained the cocaine found in his possession. The defendant reasonably may have asked his counsel whether this question was within the scope of the Grand Jury inquiry as he understood it at the time he waived his privilege against self-incrimination. (See, e.g., People v Scott, 124 Misc 2d 357, supra; People v Coppola, 123 Misc 2d 31, supra.) In any event, the defendant was properly allowed to consult with counsel and thereafter answered the question.
The second occasion when counsel apparently consulted with the defendant followed the question whether the defendant had been arrested for criminal sale of a controlled substance prior to his pleading guilty to criminal possession of a controlled substance. This was an improper question, insofar *629 as a witness may be properly impeached only on the basis of bad acts or convictions, and not upon the unsubstantiated allegations of an arrest. (People v Gottlieb, 130 AD2d 202, 207 [1st Dept 1987].) Counsel could have properly advised the defendant not to answer the question until a ruling could be obtained from the supervising Judge.
The third occasion, when the Assistant District Attorney admonished counsel not to speak with the defendant while the Assistant was asking a question, also involved an improper question, which was whether the defendant had ever been jailed for a crime that he did not commit. This question was simply immaterial to the Grand Jury’s investigation into the defendant’s alleged possession of a vial of cocaine with intent to sell. Again, counsel could have properly advised the defendant not to answer the question until a ruling could be obtained from the supervising Judge as to whether it was a proper question about matters material to the investigation.
The fourth occasion, when the Assistant District Attorney stated that counsel was "instructing her client as to what answer he should provide”, involved a question that counsel may well have believed was beyond the scope of the intended waiver of immunity. (People v Coppola, 123 Misc 2d 31, supra; People v Scott, 124 Misc 2d 357, supra.) The question concerned where the defendant bought crack cocaine, and was not limited in time. Since the defendant had testified that he used crack for more than five years, this was a question of considerable scope and potentially subjected the defendant to prosecution for the possession of controlled substances on many occasions. The defendant may have been well advised to invoke the privilege against self-incrimination as to that question in particular; to object to the scope of the question; or to challenge the relevance of the question to the investigation. It should be noted that in response to the Assistant District Attorney’s remark, the defendant stated that he had initiated the consultation.
The fifth occasion appears to have been a gratuitous characterization, in the form of a question, that the defense counsel had provided the defendant with the answer to the previous question. At best, the defendant was entitled not to answer the question whether his counsel had told him what to say, on the grounds of attorney-client privilege. The question clearly called for the defendant to reveal the substance of his communication with counsel in the Grand Jury room.
*630 The Assistant District Attorney’s conduct undermined the integrity of the Grand Jury proceeding to the defendant’s prejudice. The proper procedure for the Assistant District Attorney to follow where he believed that the witness’ counsel was giving the witness strategic advice in answering the Assistant’s questions was to request that the foreperson call a recess in the proceeding and to seek a directive from the supervising Judge to the attorney to limit her advice to legal matters affecting the defendant’s rights as a witness. By characterizing counsel’s communication with the defendant as instruction on how to testify, the Assistant District Attorney may well have influenced improperly the Grand Jury’s evaluation of the defendant’s credibility. This combined with other prejudicial conduct such as inquiring into the defendant’s use of his welfare payments (see, People v Moore, 26 AD2d 902 [4th Dept 1966]); the use of the defendant’s criminal history, particularly the emphasis upon and details of the controlled substance offenses (People v Gunther, 175 AD2d 262, 264 [2d Dept 1991]) and the use of a criminal sale charge of which the defendant was not convicted (People v Gottlieb, supra, 130 AD2d, at 207), was so great as to lead the Grand Jury to conclude that the defendant had a disposition to commit crimes, despite the Assistant’s limiting instruction (see, People v Rosa, 145 Misc 2d 423, supra); and asking the police officer on rebuttal whether the defendant’s testimony was truthful (People v McRoy, 121 AD2d 566, 568 [2d Dept 1986]; see, People v Ciaccio, 47 NY2d 431, 438-439), sufficiently impaired the integrity of the proceedings to require re-presentation before another Grand Jury.
The indictment is dismissed with leave to re-present.