[685 NYS2d 648]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM DUNN, Respondent.

First Department, December 10, 1998

88

APPEARANCES OF COUNSEL

*Morrie I. Kleinbart* of counsel, New York City (*Marc Frazier Scholl* on the brief; *Robert M. Morgenthau, District Attorney* of New York County), for appellant.

*Paul Wiener* of counsel (*M. Sue Wycoff*, attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

The People appeal from the dismissal of an indictment charging defendant with fourth-degree criminal possession of stolen property, i.e., a Macy's credit card. The dismissal was on the ground that defendant, who, as the record shows, repeatedly acted obstreperously and ignored numerous directives to limit his testimony to the relevant facts, in a contentious appearance before the Grand Jury, was denied his statutory right to testify (CPL 190.50 [5] [a]).

According to the Grand Jury testimony, on November 21, 1996, at about 7:20 P.M., defendant attempted to charge over $700 worth of merchandise at Macy's Herald Square store in Manhattan, by presenting a Macy's credit card issued in the name of James D. Frost. When the cashier entered the card number, the register, rather than accepting the transaction, instructed the cashier to ask for identification. Since the identification defendant presented did not include a photograph, the cashier became suspicious and telephoned Macy's credit card hotline. After speaking to the person on the hotline, defendant asked the cashier to hold the merchandise until his return.

After defendant's departure, the cashier and a Macy's security officer determined that the proffered credit card had been reported stolen. On defendant's return 15 minutes later, the security officer took him to the security office. Defendant stated that the credit card was his father's and that he had been au-

thorized to use it. Defendant was subsequently arrested. A postarrest search of defendant uncovered a number of other cards in the name of James D. Frost as well as a medical insurance card in the name of Jenny J. Frost. Defendant explained that the cards had come from a wallet he had found.

At his Criminal Court arraignment on charges of fourth-degree possession of stolen property, i.e., two credit cards stolen from James Frost, and one count of attempted petit larceny, based on his attempt to use one of those cards to purchase merchandise at Macy's, defendant served notice of his intention to testify before the Grand Jury. In their subsequent presentation to the Grand Jury, the People called the Macy's cashier and security officer as their witnesses. Four days later, defendant appeared with his attorney before the Grand Jury and acknowledged that he had read and signed a waiver of immunity and had conferred with his attorney.

When asked if he understood that even though he was appearing before the Grand Jury as a witness he could still be charged with a crime, defendant stated that he "[would hope that not mean that by my testimony today, that you would be relieving your obligation to present your case and they can indict me on the testimony; is that what you saying?" After some verbal jousting with the prosecutor, defendant acknowledged his understanding that he could "be charged with the crime or crimes base[d] upon [his] testimony or other evidence submitted to the grand jury".

Asked by the prosecutor if he wished to make a statement about the incident that took place at Macy's on November 21, 1996, defendant explained that he was exercising his right to appear to "explain my actions an[d] my conduct on the date of the allege[d] incide[n]t—here, with a view toward asking you not to vote a true bill, not to subject me to the ordeal of waiting for and going on trial. And after I have given you that explanation, I will ask you to do that."

When defendant proceeded with a statement that it was his understanding that the Grand Jury "not only have the function of procuring evidence and voting" and the prosecutor interrupted, defendant chided him that he could not "direct me as to exactly—I can testify." Suggesting that they ask the supervising Judge for a ruling, defendant cut off the prosecutor's response and directed that he not interrupt him unless he was doing something "clearly illegal or outside of procedural prerequisite." When the prosecutor asked defendant to limit his testimony to the events of November 21, 1996, defendant

demanded to appear before the Judge in charge. Outside of the Grand Jury chamber with defendant present, the prosecutor advised defense counsel that defendant "could make any statement he wished concerning what happened or did not happen on November 21, 1996, but that I would not allow him to go into irrelevant matters." After consulting with his attorney, defendant returned to the Grand Jury room.

On his return, defendant, when asked if he would like to make a statement about the November 21st incident, stated that he wished "to testify * * * in defense of the charges lodged against me in the felony complain[t] * * * within parameter of reason and—and law, and within the boundaries of my own presentation and not stipulated by [the prosecutor] and [his] liking." Defendant told the grand jurors that it was relevant as to what happened on November 21st "for me to describe to them briefly, not dogmatically why I'm here." The prosecutor interrupted defendant to remind him that he was there to present only "relevant and competent testimony pertaining to the incident under investigation" and warned that if he did not comply the proceeding would be stopped.

Instead of giving a factual account of the incident, defendant offered a not always coherent lecture to the Grand Jury on the alleged insufficiency of the evidence presented against him:

"In the felony complaint in Criminal Court, I was charged on November 21st. It says that 1920 hours with two offenses, Penal Law Section 165.45; two counts of criminal possession of stolen property in the fourth degree. These charges were brought by an officer, a police officer name Maria Cobin (phon) of the Midtown South Precinct. I don't know if you have heard from her, but she's one who brought the charges and felony complaint to which I have been held on these charges on November 21st.

"In her felony complaint she claims that Detective Clouden, who I don't know, a Detective Clouden. I know him as Mr. Clouden who is a security officer, an African gentleman for Macy's claims three things: Claims that I presented a Macy's credit card in the name of James Frost in attempt to purchase seven hundred dollars worth of merchandise, worth of clothes and that the card was stolen. And that I had a Bloomingdale card in the name of James Frost and that card too was stolen. This is an affidavit signed, a felony complaint signed by Officer Cobin, based upon whatever information she allegedly got from Detective Clouden. In addition to that, they charge me with attempted petit larceny in the same phony complaint, that I attempted to purchased these clothing.

"What's peculiar here, is not what I see here and—but is not here—What's not here is not before you. If you were aware of it, you would not proceed to vote a true bill of possession of stolen property.

"Mr. Clouden, the detective, and Mr. Frost, whom you should know a lot more about, the allege victim who also works, I think in the same employers as this gentleman here, is not what it appears to be on top.

"First of all, the attempted possession, the attempted petit larceny is conclusive. I suggest that you—that the district attorneys in the State of New York, has not presented a single piece of evidence that I attempted to purchase those documents. I suggest to you that any and all evidence pointing towards that, comes out the mouth of two people who were not there, one being Detective Clouden who was not there, and the other being Mr. Frost who was definitely not there.

"I suggest to you, you have not heard from the buyer. I have no right to ask you to call a particular witness, but I can certainly request that you consider calling one and I ask you to do that. This witness is an individual who conducted the actual sale on the date, I guarantee that the People did not present her before you.

"And there is a reason why, because if you question that lady, you would find that I was not the person who attempted to make a purchase, one; and two, who possessed the card, that's the second thing. And without that there is no basis for me being there and no basis for me being held or being subjected to a trial.

"I am not coming before you and say I'm squeaky clean. I am not guilty of charges presented. I have a history and my history is probably more the reason I'm here, but I don't believe in America we should—This is the stage where they stop using your history. Once you get to this body, the history does not matter any more. It's the fact that they have or do not have. That should do from here.

"I ask you to reply exclusively on facts. If they have not sufficient evidence to warrant me being held for trial or further action on this case, don't let them proceed. I say that's part of your responsibility as much as it is to protect the people by voting and indicting. You have a duty not to vote if there is not sufficient evidence."

When defendant continued, advising the Grand Jury that "[t]he second point which I feel is just so important as the first,

and I'm going to leave a copy of this felony complainant [sic]", the prosecutor interrupted, "I'm sorry to interrupt. Could you limit your statement to what did or did not happen?" When asked as to which of defendant's comments were improper, the prosecutor explained that defendant could not refer to "such things as [the] felony complaint[,] which is hearsay" and asked defendant to limit his comments "to what did or did not happen on November 21st." After apologizing, defendant stated, "Sir, I think a misstatement that—Listen they claim in this phony complaint". Again, the prosecutor interrupted to state that the "phony complaint" was not before the Grand Jury. Defendant responded, "I say to you that this Detective Clouden and this officer who presented me, they only tell you—Why don't you have the truth from these people. You are trying to stop me from telling them this is a blatant—that this document is holding me here right now. Why don't you allow me instead of how *[sic]* to present this case."

When the prosecutor again attempted to warn defendant of the consequences of his failure to limit his testimony to the events of November 21st, defendant stated "I can use this felony complaint to base my complaint." Defendant then asked that he and the prosecutor go before a Judge for a ruling. The prosecutor again then asked defendant if he wished to discuss the facts of the case; defendant merely renewed his request to see a Judge. At that point, defendant was excused. After hearing from another witness, James D. Frost, the Grand Jury, asked to vote on the charges, returned an indictment charging defendant with criminal possession of stolen property in the fourth degree based on defendant's possession of a stolen Macy's credit card.

In moving to dismiss the indictment on the ground that he had been denied his statutory right to testify before the Grand Jury, defendant, by counsel, alleged that "[v]ery shortly into [defendant's] testimony [the prosecutor] interrupted [defendant] and attempted to limit [his] testimony. As [defendant] attempted to continue his testimony [the prosecutor] interrupted [him] several more times." Finally, defense counsel argued that defendant had been removed from the Grand Jury before he had completed his testimony and without a judicial ruling, as he had requested. In opposing, the prosecutor referred to the irrelevant statement, in the form of argument, that defendant had given during his appearance and the multiple warnings given him, including the discussion outside the Grand Jury chamber with defense counsel present. The

prosecutor also noted defendant's extensive criminal record, including prior experiences before Grand Juries in other cases in which he had exercised his right to testify, and his improper conduct in at least one of those cases. The minutes of the Grand Jury proceeding in an unrelated matter and in the instant one were appended to the People's opposing papers.

In dismissing the indictment with leave to re-present, the motion court held that the prosecutor, before having defendant removed from the Grand Jury room, failed to advise him as to the meaning of hearsay, explain to him why he could not read the felony complaint or advise him that he could refer to the events referred to in the felony complaint. The court also noted the prosecutor's failure to ask the grand jurors if they had any questions of defendant and that it appeared from the transcript that the grand jurors wanted to hear additional testimony from defendant. Finally, the motion court held that, while a defendant may testify only to matters relevant to the case before the Grand Jury, he "must be given a fair opportunity to get there, before being dismissed by a prosecutor" and that defendant had been denied that opportunity. Since it is obvious that defendant was using his opportunity to testify as a vehicle to argue the inadequacy of the People's presentation, and for no other purpose, we reverse.

It is well established that a defendant who has provided timely notice has a right to testify before a Grand Jury hearing testimony about a crime that the defendant is alleged to have committed. (CPL 190.50 [5]; *People v Evans*, 79 NY2d 407, 413-414; *People v Smith*, 87 NY2d 715, 720-721.) The right, however, is not absolute. The statute specifically provides that a defendant's testimony "should be regarding 'relevant and competent evidence concerning the case under consideration.'" (*People v Smith*, 84 NY2d 998, 1001; CPL 190.50 [5] [b].)

The determination as to what constitutes relevant and competent evidence is a function of the office of the District Attorney, who acts as the legal advisor of the Grand Jury. (CPL 190.25 [6]; *People v Huston*, 88 NY2d 400, 406; *People v Di Falco*, 44 NY2d 482, 486.) When a prosecutor appears before the Grand Jury, he acts in a dual capacity, that of an advocate whose obligation is to present evidence in support of an indictment and that of a judicial officer whose obligation it is to render evidentiary rulings, instruct the Grand Jury on the law, and conduct the proceeding in a manner fair both to the People and the accused. (CPL 190.25 [6].)

What constitutes relevant and competent evidence is determined in accordance with the rules governing the admis-

sibility and reception of evidence in criminal trials. (CPL 190.30 [1]; *People v Mitchell*, 82 NY2d 509, 513.) Generally, hearsay evidence is inadmissible before the Grand Jury. (*People v Huston, supra*, 88 NY2d, at 406-407; *People v Rodriguez*, 235 AD2d 504, 506.) Even evidence that would undoubtedly be admissible at a trial on the same charges may be precluded if that evidence is irrelevant to the question before the Grand Jury, that is, whether legally sufficient evidence and reasonable cause exist to return an indictment (*People v Martucci*, 153 AD2d 866, 867, *lv denied* 74 NY2d 950 [witness's testimony about victim's character in rape prosecution precluded]).

In order to assure that a testifying defendant complies with the statutory mandate that his evidence be relevant and competent, a prosecutor may interrupt a defendant's testimony at any point and request that he confine his statement to the facts relevant to the issues before the Grand Jury. (*People v Smith, supra*, 84 NY2d, at 1001; *People v Valvano*, 186 AD2d 769.) If a defendant refuses to comply with a prosecutor's direction that he confine himself to matters relevant to the crime under investigation, resulting in his removal as a witness from the Grand Jury, he should not be heard to argue that his right to testify before the Grand Jury was abridged.

After being advised numerous times to limit his testimony to the events of November 21, 1996 and despite being warned that he would be removed from the Grand Jury room if he persisted in his manner of testifying, defendant continued to argue that the People had failed to present adequate proof to the Grand Jury and to refer to the "phony" felony complaint. Ultimately, the prosecutor ordered that he be removed. It should be noted that neither defendant nor his attorney ever advised the prosecutor that defendant would comply with the prosecutor's rulings.

A review of the record reveals that defendant's own conduct justified each of the interruptions and the prosecutor's direction that he confine his statement to relevant and competent evidence. Even after warning defendant that if he did not give testimony relevant to the incident in question, his testimony would end, the prosecutor permitted him to speak, without interruption, in a diatribe that covered four pages of transcript and provided little, if any, factual information about the incident and constituted an attack on what defendant believed to have been the evidence before the Grand Jury. He read a portion of the felony complaint, identified the witnesses mentioned in it and then characterized it as a phony complaint.

He further commented that if the Grand Jury were aware of certain facts not before it, it would vote against charging him with one of the crimes asserted in the complaint, criminal possession of stolen property. He remarked, incorrectly, that the attempted petit larceny charge, arising out of his attempt to use the stolen credit card to pay for merchandise at Macy's, could not stand because the Macy's cashier to whom he had presented the card had not testified.

Abandoning any pretense that his remarks were even remotely testimonial in nature, much less relevant or competent, defendant then argued that his criminal record was the reason he was being charged and made a blatant plea that the grand jurors refuse to indict him. Finally, after numerous interruptions and prosecutorial directions that he confine his testimony to the November 21st incident at Macy's, defendant again persisted in arguing with the prosecutor about referring to the felony complaint and was removed from the chamber. A prosecutor acting in his quasi-judicial role before the Grand Jury should have the right to exclude a defendant witness who repeatedly refuses a direction to testify factually as to the incident in question and to treat his defiant conduct as a forfeiture of the right to testify.

While it is true that defendant repeatedly asked to go before the Grand Jury Judge for a ruling, the prosecutor, as legal advisor to the Grand Jury, along with the court (CPL 190.25 [6]), is, as noted, empowered by statute to rule on the relevance of testimony presented to that body (*People v Di Falco, supra,* 44 NY2d, at 487; *People v Huston, supra,* 88 NY2d, at 406) and thus has no obligation to seek a judicial ruling himself, or to comply with a defendant's request that he do so. (*See, People v Harris,* 173 Misc 2d 248, 253.) Indeed, recognizing the prosecutor's competence to make evidentiary rulings during Grand Jury proceedings, one court has observed that only in the exceptional case should a ruling be sought from the Grand Jury Judge. (*People v Cajigas,* 174 Misc 2d 472, 478.) This was not such a case. And, while a defendant may seek the intervention of the Grand Jury Judge if he disagrees with a ruling or feels mistreated by the prosecutor (*People v Smays,* 156 Misc 2d 621, 627), the record does not show that either defendant or his attorney sought such a ruling after defendant's exclusion from the Grand Jury chamber.

The motion court appears to have premised its conclusion that defendant had been denied a full and fair opportunity to testify before the Grand Jury on the belief that the prosecutor

had an obligation to define the meaning of "hearsay" and to explain to defendant why he could not read the felony complaint. There is no authority for the proposition that a ruling by the Grand Jury's legal advisor must be explained, much less justified, to a witness. This is particularly true, where, as here, defendant had been repeatedly warned to confine himself to relevant testimony.

Moreover, as the record shows, defendant was quite familiar with the Grand Jury process and had pursued strategies similar to those in this case, when, for example, in 1986, he appeared before a New York County Grand Jury and, just as he did here, jousted with the prosecutor over his waiver of immunity and testified to irrelevant and extraneous matters. In one particular case, he testified before the Grand Jury for three days. Defendant's experience in the criminal justice system and, most particularly, before Grand Jury panels in New York County, buttresses the conclusion that the prosecutor was not obliged to do any more than he did here.

Finally, it should be noted, some jurors, after defendant's removal, expressed concern about the need for a judicial ruling and one indicated his/her belief that the matter of defendant's statement had not been "quite handled right." A Grand Jury, of course, is fully entitled, if it so chooses, to direct the People to return a witness for questioning. (*See generally*, CPL 190.50 [3].) At no time did the Grand Jury make a specific request for defendant to return for questioning. When a grand juror asked if the credit cards were found in defendant's possession, the prosecutor, without indicating the substance of the testimony, responded, "I think a prior witness testified on that point." It does not follow that the juror was referring specifically to a need to hear defendant's testimony on that point.

In sum, defendant was not "prevented from fully presenting his narrative account" to the Grand Jury and the mandate of CPL 190.50 (5) (b) was followed. (*People v Roman*, 228 AD2d 392, *lv denied* 88 NY2d 1024.)

Accordingly, the order of the Supreme Court, New York County (Budd Goodman, J.), entered on or about May 30, 1997, granting defendant's motion to dismiss the indictment and dismissing the same with leave to re-present, should be reversed, on the law, the motion denied, the indictment reinstated and the matter remanded for further proceedings.

NARDELLI, MAZZARELLI, ANDRIAS and SAXE, JJ., concur.

Order, Supreme Court, New York County, entered on or

about May 30, 1997, reversed, on the law, the motion to dismiss the indictment denied, the indictment reinstated and the matter remanded for further proceedings.